Evelyn V. Keyes, Justice *432 In this civil commitment proceeding, the State petitioned to have appellant, Christopher Williams, declared a sexually violent predator under the Sexually Violent Predators Act ("SVP Act" or "the Act"). See TEX. HEALTH & SAFETY CODE ANN. §§ 841.001 -.151 (West 2017). After a jury found beyond a reasonable doubt that Williams was a sexually violent predator, the trial court signed a final judgment and entered an order of civil commitment.
In six issues, Williams contends that (1) the State and trial court did not follow Texas Rule of Civil Procedure 204, which sets out procedures relating to the physical and mental examination of parties; (2) the trial court erroneously sustained the State's objections to Williams' requests for admissions that it could not admit whether Williams had been granted parole because it was easier for Williams to obtain his parole records; (3) the State failed to present sufficient evidence that ordinary psychological or psychiatric treatment modalities are not available for Williams; (4) the jury charge failed to instruct the jury that, to be a sexually violent predator, Williams needed to have serious difficulty controlling his behavior; (5) the jury charge failed to inform the jury that civil commitment under the SVP Act "must be restricted to persons whose difficulty controlling their behavior is distinguishable from the dangerous, but typical, recidivist convicted in an ordinary criminal case"; and (6) the State failed to present sufficient evidence that Williams was likely to reoffend.
We affirm.
Background
In May 2005, Williams pleaded guilty to two federal offenses-receipt of child pornography and possession of child pornography-and the District Court for the Southern District of Texas assessed his punishment at confinement in a federal penitentiary in North Carolina for 151 months and 120 months, respectively. The federal court ordered that, upon release from imprisonment, Williams be on supervised release for life. In January 2006, Williams pleaded guilty in the 178th District Court of Harris County to two counts of aggravated sexual assault of a child under age fourteen, two counts of sexual performance by a child, two counts of indecency with a child by contact, and one count of indecency with a child by exposure. The state court assessed Williams' punishment at ten years' confinement for the indecency with a child by exposure offense and one of the offenses of sexual performance by a child, and twelve-and-a-half years' confinement for the other five offenses, to run concurrently. Each of the state judgments of conviction included a special instruction that the sentences "are to be served in a Federal Institution to run concurrent [with] the previous 151 month sentence in [the] federal case."
In September 2015, after Williams had been granted parole in his federal cases and as he was nearing the end of the sentences in his state cases, the State petitioned to have Williams declared a sexually violent predator under the SVP Act. The *433 State alleged that Williams was a repeat sexually violent offender and that he suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. Shortly after filing its petition, the State moved to have Williams examined by an expert, as provided by Health and Safety Code section 841.061(c). The trial court granted the motion, ruling that the examination should occur "immediately if possible," but prior to the end of the discovery period. Williams was subsequently examined by Dr. Timothy Proctor, who later testified at the commitment proceeding on behalf of the State.
Throughout the discovery period, both the State and Williams served numerous requests for admission and other written discovery. Relevant here are several requests for admissions in which Williams requested that the State admit that Williams had been granted parole on each of his offenses. The State made the following identical objection to each of Williams' requests:
Petitioner [the State] objects to this request as it is vague. Petitioner objects that the information sought is obtainable from some other source that is more convenient or less burdensome, namely: Respondent [Williams]. Petitioner further objects that this request asks for the admission of a matter that is hearsay. Under Section 841.004 of the Texas Health and Safety Code, the Special Prosecution Unit-Civil Division is "responsible for initiating and pursuing a civil commitment proceeding." The subject of this request is not within the personal knowledge of the Special Prosecution Unit. Subject to the foregoing objections and without waiving same, Petitioner cannot admit or deny this request at this time as Respondent had not yet been released from TDCJ. It is unclear as to whether or not his parole plans have been fully approved in the state he plans on paroling to.
Williams challenged the sufficiency of the State's objections to these requests, but the trial court ruled in favor of the State and sustained the State's objections.
At trial and in the presence of the jury, the State read into the record all of Williams' admissions in response to the State's requests, which included admissions that Williams had previously been convicted of nine sex-related offenses in state and federal court. Williams, who had been a P.E. teacher and athletic director at Holy Spirit Episcopal School in Houston, admitted that he had "joked around with [his] students about the size of their penises," that he had watched pornographic movies with students, that he had performed oral sex on a child, that he had fondled a child, and that "[e]ven though [he] knew it was wrong to sexually offend against [his] victims, [he] did it anyway."
Dr. Proctor, a forensic psychologist, testified that the State hired him to determine whether Williams had a behavioral abnormality that made him likely to engage in a predatory act of sexual violence, and he conducted an interview with Williams.[1] In his testimony, Dr. Proctor discussed Williams' history of sexual offenses, which began when Williams was about twenty and watched his younger cousin masturbate. Williams attended college at the University of Houston, and *434 while he was there, he had a student job in the athletic department. Williams was ultimately fired from that position for using a university printer to print a pornographic picture, and Dr. Proctor reviewed information indicating that the particular picture was of a child.
After graduating from the University of Houston, Williams accepted a job in the athletic department of Holy Spirit Episcopal School. Dr. Proctor testified to the details of numerous instances in which Williams befriended his male students and their families, and, over the course of years, engaged in a pattern of conduct that began with inappropriate sexual jokes and escalated to having discussions about the students' penis size and pubic hair, to exchanging sexually explicit instant messages with his students, to receiving nude photographs of his students, to watching students masturbate and masturbating in their presence, to touching them sexually, and, ultimately, to performing oral sex on one of the students. At least one of the students was as young as eleven years old when Williams began inappropriately touching him. Williams moved to Las Vegas in 2003, where he was later arrested on the federal child pornography offenses.
Dr. Proctor opined that Williams does have a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. One of the tests that Dr. Proctor used in developing his opinion was the Static-99R, an actuarial measure that assesses ten risk factors for an individual's likelihood of committing a future act of sexual violence. Dr. Proctor emphasized that an individual's score on the Static-99R is just one piece of information that he considers when performing an evaluation and that, because it only takes into account certain risk factors, it is often necessary for him to consider additional information not covered by the measure and then adjust his opinion about the individual's risk for reoffending up or down.
Dr. Proctor testified that the Static-99R measures "static" risk factors, or risk factors that generally do not change over time. This measure considers factors such as the individual's age, whether the individual has had a long-term, live-in romantic relationship, prior sexual offense criminal history, violent offense history, a large number of sentencing dates for criminal offenses, unrelated victims, and male victims. Dr. Proctor testified that when he considered the Static-99R's risk factors, Williams fell within the "low-moderate" range for reoffending. He stated that when formulating his ultimate opinion about Williams' risk for reoffending, he considered other "dynamic" risk factors and that, when considering these factors, he believed the "low-moderate" range on the Static-99R underestimated Williams' risk of reoffending.
According to Dr. Proctor, it was more accurate to place Williams in the "moderate" range for reoffending. He stated that Williams has an "ingrained history of sexual interest in children, including prepubescent children," and that the Static-99R did not account for his long history of offending before his nine convictions of sexual-related offenses. Dr. Proctor considered the existence of unreported victims, including Williams' cousin, a situation in which Williams invited children to view pornography with him while he lived with his sister, the fact that he was fired from his student job at the University of Houston for printing a pornographic picture which may have been of a child, and his strong interest in viewing child pornography. Dr. Proctor stated that, considering the "whole picture," he "fe[lt] like there's a level of risk here that isn't fully captured by the Static."
*435 Dr. Proctor opined that Williams suffers from pedophilia, or the sexual attraction to children who are prepubescent, or generally under the age of thirteen. He characterized this as a "lifelong condition," and he stated that Williams suffered from pedophilia at the time of his offenses and continued to do so at the time of trial. He also considered as a risk factor for reoffending the fact that Williams had multiple "contact" sexual offenses, which indicated that he persistently engaged in offending behavior and that this behavior was not isolated. Dr. Proctor also testified that Williams had not been enrolled in a formal sex offender treatment program, although Williams began, but had not completed, a correspondence treatment program around the time he was being considered for parole in his state cases. Dr. Proctor found it concerning that Williams told him that he would be willing to do sex offender treatment but that he "didn't really think that he needed it to prevent himself from offending again in the future," and Dr. Proctor stated that this revealed a lack of self-awareness.
Dr. Proctor opined that Williams has a behavioral abnormality that has affected his emotional or volitional capacity. He stated that "there is a long-standing, persistent, well-ingrained sexual attraction to children that has appeared at an early point in his adulthood" and that "this persistent sexual attraction to children ... is at a level that I believe is indicative of being likely of him engaging in predatory acts of sexual violence."
Williams testified and admitted that he has sexually assaulted children and that he has a problem with seeking out child pornography. He testified that he has never intentionally looked for pornography involving prepubescent children. He stated that he is not still sexually attracted to children and that he has not been since around the time of his arrest. Williams also testified, without objection, that he has been granted parole in his state cases, but he has not been released from confinement. He testified that he is "not at risk of offending," that he "will not reoffend," and that he "will never have another victim." He stated that, upon release, he plans to move to Arizona, where his mother lives, register as a sex offender, and try to get into a sex offender treatment program. He testified that he does not think that he would reoffend if he did not enter a sex offender treatment program, but he acknowledged that "it's a benefit for [him] and for the public" for him to enter such a program.
Williams called two experts to testify on his behalf. Dr. Marisa Mauro, a forensic psychologist, conducted an evaluation of Williams to determine if he had a behavioral abnormality. Dr. Mauro opined that Williams did not have a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. Dr. Mauro gave Williams the same score on the Static-99R as Dr. Proctor did. However, she considered Williams to be at low risk for reoffending, in part because, although he was convicted of nine offenses, he only had one "sentencing occasion"-for example, he did not decide to commit another offense after being released from confinement for a previous offense. She also stated that Williams was at low risk for recidivism because of his education level, his prior work experience, his family support system, the correspondence sex offender treatment program that he was working on completing at the time of trial, his behavior while incarcerated-during which he did not receive any disciplinary actions-and his remorse. Dr. Mauro testified that Williams has the ability to form sexual relationships with appropriately-aged individuals and that he does not have a preference for persons outside his age *436 group. Dr. Mauro did not agree with Dr. Proctor's diagnosis of pedophilia because she did not agree that Williams had a sexual attraction to prepubescent children-instead, his victims were slightly older. She testified that, while sex offender treatment might be helpful to Williams, she did not believe it was necessary for him to avoid reoffending.
Dr. Karen Lawson, a clinical and forensic psychologist, first met Williams in December 2003 when he was referred to her following his arrest, and she evaluated him over approximately five months at that time. In the criminal proceedings against Williams, she diagnosed him with pedophilia, exclusive type, meaning that he was only sexually attracted to prepubescent children and not to adults. She continued to have contact with Williams after his sentencing at the behest of his mother to "try to help him understand what he was facing and what he had done." She did not consider these meetings to be counseling or therapy.
Dr. Lawson next had contact with Williams in preparation for the commitment proceeding because his counsel hired her to perform a behavioral-abnormality evaluation. Dr. Lawson opined that her earlier pedophilia diagnosis no longer applied to Williams at the time of the commitment proceeding and that he had not met the criteria for that diagnosis for over ten years. She stated that she saw no evidence that Williams continued to be sexually interested in minors. Dr. Lawson further opined that Williams did not have a behavioral abnormality and that he had "no diagnosable psychiatric condition." She also opined that Williams did not have difficulty controlling his behavior and that "he's at extremely low risk of ever reoffending." Dr. Lawson agreed with Dr. Mauro that Williams did not need sex offender treatment to avoid reoffending.
Williams requested that the trial court include multiple instructions in the jury charge. Relevant to this appeal, he requested that the court instruct the jury that a behavioral abnormality is "a condition that causes serious difficulty controlling behavior" and that commitment under the SVP Act "must be restricted to persons whose difficulty controlling their behavior is distinguishable from the dangerous, but typical, recidivist convicted in an ordinary criminal case." The trial court refused to submit these instructions in the charge.
The jury charge included definitions for "sexually violent predator," "behavioral abnormality," and "predatory act," and these definitions tracked the statutory language defining these terms. The sole jury question was: "Do you find beyond a reasonable doubt that Christopher James Williams is a sexually violent predator?" The jury answered "yes" to this question.
The trial court signed a final judgment and an order civilly committing Williams upon his release from the Texas Department of Criminal Justice ("TDCJ"). Williams filed a motion for new trial that was overruled by operation of law. This appeal followed.
Sufficiency of Evidence
In his third issue, Williams contends that the State failed to present sufficient evidence that ordinary psychological or psychiatric treatment modalities were not appropriate for him, and therefore his commitment as a sexually violent predator was not justified. In his sixth issue, he contends that the State failed to present sufficient evidence that he was likely to reoffend and commit another sexually violent offense. We address these issues first.
*437 A. Standard of Review
Proceedings pursuant to the SVP Act are civil in nature, but because the State's burden of proof at trial is the same as in a criminal case, we review verdicts in SVP cases using the standard of review applied in criminal cases. In re Commitment of Stuteville , 463 S.W.3d 543, 551 (Tex. App.-Houston [1st Dist.] 2015, pet. denied) ; In re Commitment of Wirtz , 451 S.W.3d 462, 464 (Tex. App.-Houston [14th Dist.] 2014, no pet.). We review the evidence in the light most favorable to the verdict to determine whether any rational fact finder could find, beyond a reasonable doubt, the elements required for commitment under the SVP Act. Stuteville , 463 S.W.3d at 551. "It is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts." Id. ; see In re Commitment of Mullens , 92 S.W.3d 881, 887 (Tex. App.-Beaumont 2002, pet. denied) (stating that fact finder may resolve conflicts and contradictions in evidence "by believing all, part, or none of the witnesses' testimony").
When reviewing the factual sufficiency of the evidence in a case under the SVP Act, we weigh all of the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." Stuteville , 463 S.W.3d at 552 (quoting In re Commitment of Day , 342 S.W.3d 193, 213 (Tex. App.-Beaumont 2011, pet. denied) ); see Wirtz , 451 S.W.3d at 464-65 (noting that while factual sufficiency review has been abolished in criminal cases in which State's burden is beyond reasonable doubt, courts have continued to perform factual sufficiency review in SVP cases, and declining to decide whether factual sufficiency review remains available in SVP proceedings because evidence in case at issue was legally and factually sufficient). We view all of the evidence in a neutral light to determine whether a jury was rationally justified in finding SVP status beyond a reasonable doubt. Stuteville , 463 S.W.3d at 552. We may not substitute our judgment for that of the jury, which is the sole judge of credibility and the weight to be given to witnesses' testimony. Id. We will reverse only if, after weighing the evidence, we determine that "the risk of an injustice remains too great to allow the verdict to stand." Id. (quoting Day , 342 S.W.3d at 213 ).
B. Elements of SVP Determination
Under the SVP Act, the State must prove that a person is a sexually violent predator beyond a reasonable doubt. See TEX. HEALTH & SAFETY CODE ANN. § 841.062(a) ("The judge or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator."); Stuteville , 463 S.W.3d at 552. A person is a sexually violent predator under the SVP Act if the person (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. Id. § 841.003(b) ; see also id. § 841.002(8) (defining "sexually violent offense" to include, among other things, offense of aggravated sexual assault of child, as defined by Penal Code section 22.021 ). The SVP Act defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health *438 and safety of another person." Id. § 841.002(2). The Act defines "predatory act" as "an act directed toward individuals, including family members, for the primary purpose of victimization." Id. § 841.002(5).
The Texas Legislature first enacted the SVP Act in 1999. As Williams points out, the Legislature made the following legislative findings, which are codified in the Act itself:
The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. The legislature finds that the existing involuntary commitment provisions of [Health & Safety Code] Subtitle C, Title 7[2] are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society. The legislature further finds that treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment under Subtitle C, Title 7. Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.
Id. § 841.001 (footnotes omitted).
C. Evidence of Ineffectiveness of Traditional Treatment Modalities
Williams points to the legislative finding in section 841.001 that "treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment" and argues that "[t]he inappropriateness of regular mental health care is a necessary condition for a person to be a sexually violent predator." He argues that, as a result, the State was required to present evidence that traditional mental health treatment modalities would not work for Williams, and, because the State did not offer such proof, the evidence is insufficient to support the jury's finding that Williams is a sexually violent predator.
Williams is incorrect. He cites no law-and there is none-holding that these legislative findings concerning treatment modalities form an element of the sexually violent predator determination that the State must prove in order to secure a jury finding that a person is a sexually violent predator.
The Act plainly provides the elements for a sexually violent predator determination: the fact finder in an SVP proceeding "shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." Id. § 841.062(a). Further, the Legislature specifically defined the relevant terms. In particular, it defined "sexually violent predator" as a "repeat sexually violent offender" who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Id. § 841.003(a). The Legislature also specifically defined "behavioral abnormality" and "predatory act," and neither of these definitions references treatment modalities or includes the inappropriateness of traditional treatment modalities as an element of the definition. See id. § 841.002(2), (5) (defining "behavioral abnormality" and "predatory act," respectively).
*439 The SVP Act does not include any reference to treatment modalities or the inappropriateness of traditional mental health treatment modalities in its definitions of "sexually violent predator," "behavioral abnormality," or "predatory act," and we decline to hold that the State, as an element of its case, was required to present evidence that traditional treatment modalities would not be effective for Williams. See In re Commitment of Nicholson , No. 09-13-00498-CV, 2014 WL 4460417, at *4 (Tex. App.-Beaumont Sept. 11, 2014, no pet.) (mem. op.) ("Whether Nicholson would or would not be amenable to certain traditional treatment modalities would go to the weight of the evidence that a jury might consider in making its decision of whether or not Nicholson suffers from a behavioral abnormality.").
D. Evidence of Likelihood of Reoffending
As part of its burden to prove that a person is a sexually violent predator, the State must prove, beyond a reasonable doubt, that the person "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)(2). A behavioral abnormality is further defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Id. § 841.002(2).
The Legislature did not define "likely" in the context of the SVP Act. When a term is not defined by statute, we typically give that term its ordinary meaning, unless a different or more precise definition is apparent from the context of the statute. State Office of Risk Mgmt. v. Carty , 436 S.W.3d 298, 302 (Tex. 2014) (quoting TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011) ). The Texas Supreme Court, in considering the different language of "likely to engage in a predatory act of sexual violence" and "predisposes the person to commit a sexually violent offense," stated that "the import of predisposition and likelihood is exactly the same: increased risk." In re Commitment of Bohannan , 388 S.W.3d 296, 303 (Tex. 2012). The court further stated, "An increased likelihood of misconduct indicates a predisposition, and a predisposition threatens increased likelihood." Id. The court thus concluded that "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." Id. (quoting TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)(2) ).
In arguing that the State failed to present sufficient evidence that he suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence, Williams focuses on the fact that all of the experts, including Dr. Proctor, scored Williams in the "low-moderate" range for reoffending on the Static-99R, an actuarial test designed to measure the risk of committing another sexual offense. However, Dr. Proctor's testimony concerning Williams' likelihood of reoffending did not end with his score on the Static-99R.
Dr. Proctor testified that the Static-99R is composed of ten risk factors that can be useful in measuring an individual's risk for reoffending and committing another sexual offense. He testified that the Static-99R looks at "static" factors that, with the exception of the individual's age, generally do not change over time. These factors include whether the individual has had long-term, live-in romantic relationships, a prior *440 history of sexual offenses, a prior history of violent offenses, number of sentencing dates for offenses, noncontact sex offenses, unrelated victims, and male victims. Dr. Proctor also testified that he believed the Static-99R underestimated Williams' risk of reoffending because that particular test did not take into consideration "dynamic" risk factors that Dr. Proctor considered when formulating his ultimate opinion that Williams has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.
Dr. Proctor testified that he would assess Williams's risk of reoffending as "moderate," and he stated:
[T]here's a lot more to Mr. Williams and his history than gets picked up on the Static-99. His history is very long-his ingrained history of sexual interest in children, including prepubescent children.
And with the Static-99, all that gets picked up is do you have any prior sexual offenses, which means did you have any offenses prior to, in Mr. Williams' case, the nine that you got convicted of. And he doesn't have any prior to that, but there was a lot that did happen prior to those nine convictions, including unreported victims.
Dr. Proctor testified that he considered Williams' offense against his cousin, the situation in which he invited children to watch pornography with him, the incident in which he was fired from his student job at the University of Houston because he printed a pornographic picture (possibly involving a child) on a university printer, his strong interest in viewing child pornography, and the grooming of a large number of boys at Holy Spirit. Dr. Proctor testified that he observed a pattern of "very-well-ingrained pedophilia," and when he considered all of the circumstances, he "fe[lt] like there's a level of risk here that isn't fully captured by the Static." Dr. Proctor agreed with the State that the "moderate range of reoffending ... rises to the level of likely" in Williams' case.
Dr. Proctor also considered other risk factors that, based on research, have been shown to be predictive of sexual reoffending. He stated that one of those risk factors is sexual deviance, which he defined as "sexual interests that ... are abnormal and involve violating the rights of other people." Dr. Proctor stated that Williams' sexual deviance is pedophilia, or being sexually attracted to children generally under the age of thirteen. He testified that pedophilia is typically considered to be a lifelong condition, and he opined that Williams still has this condition. Dr. Proctor also considered the facts that Williams has multiple convictions for "contact" sexual offenses, indicating that his behavior of sexual offending was persistent and not isolated, as well as "noncontact" sexual offenses, such as possessing child pornography, which also increased the risk of reoffending.
The State thus presented evidence, in the form of Dr. Proctor's expert opinion, that despite scoring in the "low-moderate" risk range on the Static-99R, Williams' risk of reoffending was higher than the "low-moderate" range. Viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Williams suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. See Stuteville , 463 S.W.3d at 551-52. Furthermore, although Dr. Mauro, who also scored Williams in the "low-moderate" range on the Static-99R, and Dr. Lawson opined that Williams did not suffer from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence, it was within the province of the jury to weigh *441 the evidence, judge the credibility of the witnesses, and resolve conflicts in the evidence. See ids="6864418" index="29" url="https://cite.case.law/sw3d/463/543/#p551">id. at 552. Viewing all of the evidence in a neutral light, we conclude that the jury was rationally justified in making the SVP determination beyond a reasonable doubt, and we cannot conclude that "the risk of an injustice remains too great to allow the verdict to stand."See ids="6864418" index="30" url="https://cite.case.law/sw3d/463/543/#p551">id. We therefore hold that the State presented legally and factually sufficient evidence that Williams was likely to reoffend and commit a predatory act of sexual violence. See TEX. HEALTH & SAFETY CODE ANN. § 841.003(a).
We overrule Williams' third and sixth issues.
Compliance with Rule 204 Concerning Mental Examination
In his first issue, Williams contends that the trial court's order requiring him to be examined by the State's expert violated Texas Rule of Civil Procedure 204 because it did not specify the time, place, manner, or conditions of the examination, and it did not specify the person who would conduct the examination.
Rule 204 governs physical and mental examinations in civil cases. Under Rule 204.1, a party may, no later than thirty days before the expiration of the discovery period, move for an order compelling another party to "submit to a physical or mental examination by a qualified physician or a mental examination by a qualified psychologist." TEX. R. CIV. P. 204.1(a). The trial court may issue an order for examination only for good cause and only when (1) the mental or physical condition of a party is in controversy or (2) when the responding party has "designated a psychologist as a testifying expert or has disclosed a psychologist's records for possible use at trial." TEX. R. CIV. P. 204.1(c). The trial court's order requiring the examination must be in writing, and it must "specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." TEX. R. CIV. P. 204.1(d).
The SVP Act provides that, after the State has filed a petition alleging that a person is a sexually violent predator, "[t]he person and the state are each entitled to an immediate examination of the person by an expert." TEX. HEALTH & SAFETY CODE ANN. § 841.061(c) ; see also id. § 841.061(f) ("A person who is on trial to determine the person's status as a sexually violent predator is required to submit to all expert examinations that are required or permitted of the state to prepare for the person's trial."). Under the Act, "a mental examination of the respondent is automatic" and the State "does not have to meet the burden of showing good cause" for the examination. In re Commitment of Hatchell , 343 S.W.3d 560, 563 (Tex. App.-Beaumont 2011, no pet.). The Beaumont Court of Appeals has held that a respondent under the SVP Act "is evaluated pursuant to specific procedures for a specific purpose," and, thus, "the need for Rule 204 is obviated by the more specific procedures of the [SVP] statute." Id. To the extent of any conflict between the rules of civil procedure and the SVP Act, the provisions of the SVP Act control. Id. ; see TEX. HEALTH & SAFETY CODE ANN. § 841.146(b) ("To the extent of any conflict between [the SVP Act] and the rules of procedure and appeal for civil cases, [the SVP Act] controls."); cf. Karlen v. Karlen , 209 S.W.3d 841, 842-43 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (holding, in guardianship context, that Rule 204 does not apply to guardianship proceedings because Probate Code "maintains its own framework for evaluating such issues" and therefore "the need for Rule 204 is obviated by the more specific *442 procedures applicable in guardianship proceedings").
We agree with the Beaumont Court of Appeals that, in commitment proceedings under the SVP Act, Rule 204 and its requirements are not applicable. Under the SVP Act, both the person and the State are "entitled to an immediate examination of the person by an expert,"see TEX. HEALTH & SAFETY CODE ANN. § 841.061(c), and thus neither party is required to demonstrate good cause for the examination as Rule 204 requires. See TEX. R. CIV. P. 204.1(c) ; Hatchell , 343 S.W.3d at 563. The SVP Act contains no requirements concerning the specific contents of an order by the trial court compelling an examination, and the Act contains no requirement that a written order by the trial court compelling an examination is even necessary. See TEX. HEALTH & SAFETY CODE ANN. § 841.061(c) (providing only that "[t]he person and the state are each entitled to an immediate examination of the person by an expert" and that "[a]ll components of the examination must be completed not later than the 90th day before the date the trial begins"). We decline to hold that while the State in an SVP case need not comply with Rule 204.1(a)-(c) concerning the motion to compel an examination and what it must prove to obtain an order of examination, the trial court must comply with the requirements of Rule 204.1(d) concerning the contents of the trial court's order compelling the examination. See TEX. R. CIV. P. 204.1(d) ; see also TEX. HEALTH & SAFETY CODE ANN. § 841.061(c), (f) (providing that state is entitled to immediate examination of person and person is required to submit to all expert examinations permitted of state).
To the extent Williams argues that he was entitled to have his counsel present at his examination by the State's expert, we note that he has cited no authority supporting this argument. The Beaumont Court of Appeals has held that neither the SVP Act nor the Fourteenth Amendment requires that counsel be present during a post-SVP-petition examination by the State's expert. In re Commitment of Smith , 422 S.W.3d 802, 806-07 (Tex. App.-Beaumont 2014, pet. denied). The Beaumont Court noted that in other contexts, such as competency examinations and mental examinations when the insanity defense is at issue, the Court of Criminal Appeals has held that a defendant did not have a right to have counsel present during those examinations. See id. at 806 (citing Purtell v. State , 761 S.W.2d 360, 374 (Tex. Crim. App. 1988), and Stultz v. State , 500 S.W.2d 853, 854 (Tex. Crim. App. 1973) ).
With respect to Smith's due process challenge, the Beaumont Court stated that the examination under the SVP Act "is not a deposition conducted for the purpose of discovering Smith's testimony; rather, the examination assists the expert in assessing whether the person has a psychiatric diagnosis that validly informs the expert's professional opinion on whether the person has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." Id. at 806. The court acknowledged that if counsel were present at the examination, counsel could "observe any impropriety that might form the basis for an objection to the expert's testimony at trial," but it also noted that "counsel's presence during the interview might disrupt the examination and limit the effectiveness of the interview from a medical standpoint." Id. at 806-07. The court also noted that the expert is subject to being deposed, and counsel could discover during the deposition any evidence that might lead to the suppression of the expert's testimony at trial. Id. at 807.
*443 We therefore disagree with Williams to the extent that he argues that he had a right to have his counsel attend his examination by the State's expert.
We overrule Williams' first issue.
Requests for Admissions
In his second issue, Williams contends that the State falsely claimed in its response to his requests for admissions that it could not admit that Williams had been granted parole in his criminal cases because it was easier for Williams to obtain his parole records than the State. He argues that the trial court accepted this argument and "made Williams go to the trouble of proving these matters" at trial.
Rule of Civil Procedure 198 governs requests for admissions and provides that a party may serve on another party "written requests that the other party admit the truth of any matter within the scope of discovery." TEX. R. CIV. P. 198.1. "Unless the responding party states an objection or asserts a privilege, the responding party must specifically admit or deny the request or explain in detail the reasons that the responding party cannot admit or deny the request." TEX. R. CIV. P. 198.2(b). A party who has requested an admission under Rule 198 may move the trial court to determine the sufficiency of the responding party's answer or objection. TEX. R. CIV. P. 215.4(a). Unless the trial court determines that an objection is justified, it "shall order that an answer be served." Id. Requests for admissions are used to simplify trials and are "useful when 'addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents.' " Marino v. King , 355 S.W.3d 629, 632 (Tex. 2011) (per curiam) (quoting Wheeler v. Green , 157 S.W.3d 439, 443 (Tex. 2005) (per curiam)).
In his requests for admissions, Williams asked the State, in several requests, to admit that he had been granted parole in each of his state and federal criminal convictions. The State made the following response to each of these requests:
Petitioner objects to this request as it is vague. Petitioner objects that the information sought is obtainable from some other source that is more convenient or less burdensome, namely: Respondent. Petitioner further objects that this request asks for the admission of a matter that is hearsay. Under Section 841.004 of the Texas Health and Safety Code, the Special Prosecution Unit-Civil Division is "responsible for initiating and pursuing a civil commitment proceeding." The subject of this request is not within the personal knowledge of the Special Prosecution Unit. Subject to the foregoing objections and without waiving same, Petitioner cannot admit or deny this request at this time as Respondent had not yet been released from TDCJ. It is unclear as to whether or not his parole plans have been fully approved in the state he plans on paroling to.
Williams moved the trial court to overrule the State's objections to his requests, but the trial court sustained the State's objections. Ultimately, Williams testified, without objection at trial, that he had been granted parole on his state and federal convictions, although he had not been released from TDCJ custody.
Even if the trial court erred by sustaining the State's objections to Williams' requests for admissions concerning his parole status, a matter we need not decide, Williams was able to present evidence to the jury that he had been granted parole on all of his convictions. Williams testified to this matter without objection by the State. We hold that Williams cannot establish that the trial court's ruling sustaining the State's objections to his requests for admissions probably caused the rendition *444 of an improper judgment or probably prevented him from properly presenting his case to this Court. See TEX. R. APP. P. 44.1(a) (setting out standard for demonstrating reversible error in civil cases).
We overrule Williams' second issue.[3]
Jury Charge Instructions
In his fourth issue, Williams argues that the trial court erroneously failed to instruct the jury in the charge that a "behavioral abnormality" under the SVP Act must be one that causes the individual to have serious difficulty controlling his behavior. In his fifth issue, Williams argues that the trial court erroneously failed to instruct the jury that commitment under the SVP Act "must be restricted to persons whose difficulty controlling their behavior is distinguishable from the dangerous, but typical, recidivist convicted in an ordinary criminal case."
A. Standard of Review
A trial court must, when feasible, submit a cause to the jury by broad-form questions. TEX. R. CIV. P. 277. The trial court shall also "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." Id. We review a trial court's decision to refuse a jury instruction for an abuse of discretion. Thota v. Young , 366 S.W.3d 678, 687 (Tex. 2012) (quoting In re V.L.K. , 24 S.W.3d 338, 341 (Tex. 2000) ). The trial court has "considerable discretion" in determining proper jury instructions, and "[i]f an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." Id. (quoting La.-Pac. Corp. v. Knighten , 976 S.W.2d 674, 676 (Tex. 1998) ); see Columbia Rio Grande Healthcare, L.P. v. Hawley , 284 S.W.3d 851, 855 (Tex. 2009) ("An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence."). "A trial court may refuse to give a requested instruction or definition that is not necessary to enable the jury to render a verdict, even if the instruction or definition is a correct statement of the law." Stuteville , 463 S.W.3d at 554. We will not reverse a judgment for charge error unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the appellate courts. Thota , 366 S.W.3d at 687.
B. Instruction on Serious Difficulty Controlling Behavior
Williams' request for an instruction informing the jury that, for a person to have a behavioral abnormality there must be proof of a "serious difficulty controlling behavior" has its roots in a United States Supreme Court case that considered constitutional challenges to one of the nation's first sexually violent predator statutes. See *445 Kansas v. Hendricks , 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In Hendricks , which addressed a substantive due process challenge to Kansas's SVP Act, the Supreme Court noted that it had previously "sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.' " Id. at 358, 117 S.Ct. at 2080. The Court stated, "These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." Id. Five years later, in Kansas v. Crane , the Supreme Court agreed that Hendricks "set forth no requirement of total or complete lack of control," but it did not agree that the Constitution "permits commitment of the type of dangerous sexual offender considered in Hendricks without any lack-of-control determination." 534 U.S. 407, 411-12, 122 S.Ct. 867, 870, 151 L.Ed.2d 856 (2002) (emphasis in original). The Court further stated that it did not give the phrase " 'lack of control' a particularly narrow or technical meaning" and that " 'inability to control behavior' will not be demonstrable with mathematical precision," but it stated that it was "enough to say that there must be proof of serious difficulty in controlling behavior." Id. at 413, 122 S.Ct. at 870.
Texas appellate courts have addressed whether, in light of the Supreme Court's holdings in Hendricks and Crane , trial courts in SVP proceedings are required to instruct the jury that, to prove the existence of a behavioral abnormality, there must be proof that the respondent has serious difficulty in controlling his behavior. In In re Commitment of Browning , the jury charge asked, "Do you find that William P. Browning suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?" 113 S.W.3d 851, 862 (Tex. App.-Austin 2003, pet. denied). The charge defined "behavioral abnormality," and the tracked the language of the SVP Act. Id. at 862-63 ; see TEX. HEALTH & SAFETY CODE ANN. § 841.002(2) (defining "behavioral abnormality"). The Austin Court of Appeals held that the broad-form submission "encompassed the required lack-of-control determination" because "[a] finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has 'serious difficulty in controlling behavior.' " Browning , 113 S.W.3d at 863 (citing Mullens , 92 S.W.3d at 884-87 ). The court further held that Crane "undoubtedly requires a lack-of-control determination to be made by the jury," but Crane does not "require that determination to be made in a specific, independent finding." Id. ; see also In re Commitment of Almaguer , 117 S.W.3d 500, 505-06 (Tex. App.-Beaumont 2003, pet. denied) (agreeing that broad-form submission "encompasse[s] a lack-of-control determination" and stating that "requested jury instruction simply would have emphasized one aspect of this case already implicit in the broad-form question and statutory definitions," so trial court did not err by refusing to submit separate "serious difficulty controlling behavior" instruction).
This Court has also already addressed this particular question. See Stuteville , 463 S.W.3d at 554. In Stuteville , we noted that the charge at issue tracked the statutory language of the SVP Act and contained "the applicable statutory definitions, including the statutory definition of behavioral abnormality." Id. We further cited the Beaumont Court of Appeals' decision in Almaguer and stated, "Although Stuteville's requested instruction is a proper statement of case law, it is not statutory law and was not necessary to enable the jury to render a verdict in this case." Id.
*446 (internal citations omitted); see also Toennies v. Quantum Chem. Corp. , 998 S.W.2d 374, 377 (Tex. App.-Houston [1st Dist.] 1999) ("When liability is asserted based upon a provision of a statute or regulation, a jury charge should track the language of the provision as closely as possible."), aff'd , 47 S.W.3d 473 (Tex. 2001). We therefore held that the trial court did not abuse its discretion in refusing to submit Stuteville's requested instruction. Stuteville , 463 S.W.3d at 554.
This case is indistinguishable from Stuteville . The jury charge asked the following broad-form question: "Do you find beyond a reasonable doubt that Christopher James Williams is a sexually violent predator?" The charge defined "sexually violent predator," "behavioral abnormality," and "predatory act," and each of these definitions tracked the statutory language of the SVP Act. See TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(2), 841.002(5), 841.003(a). Williams' requested instruction on "serious difficulty controlling behavior" was not necessary for the jury to render a verdict in this case. See Stuteville , 463 S.W.3d at 554 ; Almaguer , 117 S.W.3d at 506 ; Browning , 113 S.W.3d at 863. We therefore hold that the trial court did not abuse its discretion by refusing to submit this requested instruction.
C. Instruction on Distinction from Typical Recidivist
Finally, Williams contends that the trial court erred by refusing to submit his requested instruction that the sexually violent predator determination must be restricted "to persons whose difficulty controlling their behavior is distinguishable from the dangerous, but typical recidivist convicted in an ordinary criminal case."
As support for his argument, Williams cites the Supreme Court's decision in Crane , in which it disagreed with Kansas's argument that the federal constitution permits commitment under a sexually violent predator statute "without any lack-of-control determination." See 534 U.S. at 412, 122 S.Ct. at 870. The Court stated that its prior decision in Hendricks "underscored the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment 'from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.' " Id. (quoting Hendricks , 521 U.S. at 360, 117 S.Ct. at 2081 ). According to the Supreme Court, this distinction "is necessary lest 'civil commitment' become a 'mechanism for retribution or general deterrence'-functions properly those of criminal law, not civil commitment." Id. (quoting Hendricks , 521 U.S. at 373, 117 S.Ct. at 2087 (Kennedy, J., concurring)). The Supreme Court held that "there must be proof of serious difficulty in controlling behavior" and that this, viewed in light of circumstances such as the nature of the psychiatric diagnosis and the severity of the mental abnormality, "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Id. at 413, 122 S.Ct. at 870.
The Beaumont Court of Appeals has addressed whether the failure to submit a respondent's requested jury instruction on this issue constitutes a denial of due process under the Fourteenth Amendment. See In re Commitment of Riojas , 220 S.W.3d 195, 196 (Tex. App.-Beaumont 2007, no pet.). In Riojas , the respondent argued that the trial court erred when it failed to submit a jury instruction reading, "You are instructed that this behavioral abnormality must be an inability to control his violent behavior that would make him *447 more dangerous than the ordinary dangerous recidivist." Id. The Beaumont Court pointed out that the charge's definition of "behavioral abnormality" tracked the statutory definition and that the single broad-form question asked "if Riojas 'suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence[.]' " Id. The court held a finding of a behavioral abnormality necessarily "entails a determination that he is 'more dangerous than the ordinary dangerous recidivist.' " Id. The court cited the reasoning from its decision in Almaguer , concerning a "serious difficult controlling behavior" instruction, in concluding that the requested jury instruction "would merely have emphasized one aspect of the case already implicit in the statutory definition and broad-form question." Id. (citing Almaguer , 117 S.W.3d at 505-06 ). The court held that Riojas' requested jury instruction was "not needed" and that the trial court did not err by refusing to submit it. Id.
Williams has cited no authority approving the use of his requested jury instruction or holding that a trial court abused its discretion by failing to submit such an instruction. We find the Beaumont Court's reasoning in Riojas persuasive. Furthermore, this issue is similar to Williams' fourth issue, in which we followed several courts of appeals and a panel of this Court in holding that Williams was not entitled to a separate jury instruction on "serious difficulty controlling behavior." As with that instruction, the requested instruction here is not statutory law, and it was not necessary to assist the jury in rendering a verdict in this case. See Stuteville , 463 S.W.3d at 554 ; Riojas , 220 S.W.3d at 196.
We hold that the trial court did not abuse its discretion by refusing to submit Williams' requested jury instruction on the distinction between sexually violent predators and "dangerous, but typical, recidivists." See Riojas , 220 S.W.3d at 196.
We overrule Williams' fourth and fifth issues.
Conclusion
We affirm the judgment of the trial court.

Dr. Proctor testified that "likely," while not statutorily defined, means "probable" and that "probable" means "something beyond a mere possibility or potential for harm." He testified that it is not appropriate to try to assign a particular percentage to an individual's risk for reoffending. Dr. Mauro and Dr. Lawson, experts who testified on Williams' behalf, testified similarly.

See, e.g. , Tex. Health & Safety Code Ann. §§ 574.001 -.203 (West 2017) (setting out procedures for court-ordered mental health services).

We note that Rule of Civil Procedure 215.4(b) provides that if a party fails to admit the truth of any matter requested under Rule 198 and the party who made the request thereafter proves the truth of the matter, the requesting party "may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney fees." Tex. R. Civ. P. 215.4(b) ; Peralta v. Durham , 133 S.W.3d 339, 341 (Tex. App.-Dallas 2004, no pet.). The trial court shall make the order unless it finds (1) the request was held objectionable under Rule 193, (2) the admission sought was of no substantial importance, (3) the responding party had a reasonable ground to believe he might prevail on the matter, or (4) there was other good reason for the failure to admit. Tex. R. Civ. P. 215.4(b) ; Peralta , 133 S.W.3d at 341. The appellate record contains no such request by Williams.