**Opinion filed August 21, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00098-CV

_____

## IN RE COMMITMENT OF ANTONIO RIOS

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV59426**

### M E M O R A N D U M   O P I N I O N

A jury found beyond a reasonable doubt that Appellant, Antonio Rios, was a sexually violent predator, and he now appeals the trial court's final judgment and its order of Appellant's indefinite civil commitment as a sexually violent predator under the Texas Civil Commitment of Sexually Violent Predators Act (SVP Act). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.209 (West 2017 & Supp. 2024). In one issue, Appellant argues that the evidence is factually insufficient to support the jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.003(a)(2). We affirm.

*Factual and Procedural History*

In February 2000, Appellant pled guilty to aggravated sexual assault of a child. In March 2000, Appellant pled guilty to three counts of sexual assault of a child. The offenses that led to these convictions involved Appellant having sexual intercourse with a thirteen-year-old girl and a fourteen-year-old girl. The trial court sentenced him to concurrent five-year prison terms for these offenses. After his release, in August 2015, Appellant pled guilty to four counts of indecency with a child. The offenses involved Appellant committing acts of indecency by contact and exposure against his niece from the age of seven to ten. The trial court sentenced Appellant to concurrent ten-year prison terms for these offenses.

In 2023, prior to his release from prison, the State filed a petition alleging Appellant is an SVP and requested that he be committed for treatment and supervision pursuant to the SVP Act. *See id.* § 841.041. At the commitment trial, the jury heard testimony from Appellant and forensic psychologist Jason Dunham, Ph.D., who testified as an expert witness for the State on whether Appellant has a behavioral abnormality as defined in the SVP Act. Dr. Dunham conducted a video interview with Appellant and reviewed numerous records regarding his sexual offenses, criminal history, prison records, depositions, and a previous evaluation conducted by another psychologist. Dr. Dunham identified and discussed risk factors that he considered in evaluating whether Appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Dunham diagnosed Appellant with nonexclusive pedophilic disorder, meaning he is sexually attracted to female children and adults. Dr. Dunham testified that the condition is chronic, meaning that it does not "go away." Dr. Dunham

2

described Appellant as a "sexual recidivist,"[1] stating that this is the "number one identified risk factor" for reoffending. He also diagnosed Appellant with antisocial behavior, which he explained is less severe than a personality disorder. He explained that, as an adult, Appellant has engaged in serious antisocial behavior resulting in multiple criminal offenses, including public intoxication, driving under the influence, theft, possession of drug paraphernalia, failure to pay child support, and probation violations, among others. Dr. Dunham stated that this condition affects Appellant's emotional and volitional capacity and correlates with sexual reoffending.

Dr. Dunham also diagnosed Appellant "with alcohol use disorder[,] but in remission in a controlled environment." He explained that this disorder makes sexually deviant people more likely to act on their urges. Dr. Dunham noted that, despite having received substance abuse treatment, Appellant has continued to commit sexual offenses.

Dr. Dunham stated that Appellant's first series of sexual offenses started when his daughter's fourteen-year-old female acquaintance called the house. She talked to Appellant and later came to his house where they had sexual intercourse over the span of four days. Appellant committed sex acts against her for the next six months, including anal, oral, and vaginal intercourse. These acts occurred while Appellant's son and daughter were in the house. Dr. Dunham identified the following risk factors for reoffending based on the nature of this offense: offending when easily detected,

---

[1]A recidivist is defined as "[s]omeone who has been convicted of multiple criminal offenses, usu. similar in nature; a repeat offender." *Recidivist*, BLACK'S LAW DICTIONARY (12th ed. 2024). In his testimony, Dr. Dunham defined a sexual recidivist as "somebody who has offended after they've been caught. So if somebody has, for example, 10 instances of a sexual offense against the same person, or even against two people, but they weren't caught during that time," the demarcation point is when they were caught; when they are detected. He testified, "And so a recidivist is somebody who will offend *after* they've been caught." (Emphasis added).

the numerous instances of offending, and the victim not being a family relation. Dr. Dunham noted that Appellant was untruthful in his interview and deposition regarding how he met the victim and whether he knew her age.

Dr. Dunham stated that Appellant's second series of sexual offenses started six months later when a thirteen-year-old female friend of his daughter visited Appellant's house. Appellant's adult friend took his daughter to the store, leaving Appellant alone with the thirteen-year-old. Appellant provided her alcohol and kissed her. Later that night he had sexual intercourse with her multiple times. He also took "the phone off the hook because her mom was trying to call," such that she could not contact her mother until 11:00 a.m. the next day. Dr. Dunham stated that "[g]rooming was heavily involved" in this offense "with using his daughter and also getting [the victim] drunk to have sex with her." In his interview with Dr. Dunham, Appellant denied sexually assaulting the second victim, yet in his deposition he admitted doing so, claiming that she initiated the encounter. Dr. Dunham noted that Appellant continues to deflect responsibility.

Dr. Dunham explained that Appellant offended against his third victim after serving a five-year prison sentence. In this offense, Appellant offended against his niece from the age of seven to ten. Appellant put his hands down her pants and rubbed her vagina, got on top of her on a couch and "humped" her while she was clothed, and exposed his penis to her. Appellant threatened that if she told anyone that he would kill her family. Dr. Dunham stated that Appellant exhibited an escalation in deviancy with this victim.

Regarding this series of offenses, Dr. Dunham explained that Appellant exhibited the following additional risk factors for reoffending: greater force and coercion, offending after prison and treatment, denial of wrongdoing in the interview, placing blame on his sister for making false allegations because Appellant

4

threatened to call CPS, lack of empathy for the victim, lack of remorse for his actions, grooming behavior through wrestling and tickling, and that the age of the victim increases his "victim pool," in that "people who are at risk from him" are both prepubescent and pubescent girls.

Dr. Dunham performed the Static-99R and Psychopathy Checklist-Revised (PCL-R) assessments. He explained that the PCL-R measure is highly correlated with sexual violence recidivism. Appellant scored an eighteen on this assessment, which is within the moderate range of scores. Based on this measure, Dr. Dunham did not believe that Appellant was a psychopath. The Static-99R is an actuarial instrument that compares groups of people based on risk factors and protective factors. Dr. Dunham assessed a score of five on the Static-99R, which indicates that Appellant is at an above average risk for being re-arrested or reconvicted of a sex offense in the future. Dr. Dunham believed that this score underestimates Appellant's risk for reoffending because the assessment did not consider dynamic risk factors such as lack of remorse and empathy. Considering these factors, Dr. Dunham opined that Appellant exhibits a well-above average risk of reoffending.

Dr. Dunham identified "protective factors" that indicated a decreased risk of reoffending: Appellant's age (57 at the time of trial), participation in the sex-offender treatment program, and "good institutional adjustment." However, Dr. Dunham noted that Appellant's offending escalated after his initial eighteen-month treatment program, so he believed that Appellant has shown an inability to learn from the program. Dr. Dunham ultimately concluded, based on his education, experience, and evaluation of Appellant, that Appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Appellant testified that the fourteen-year-old victim was his girlfriend. He admitted to providing her alcohol and having a sexual relationship with her that lasted six months. Appellant recalled his daughter confronting him about the relationship. Appellant claimed he did not know that his victim was fourteen, but after he found out he continued sexually assaulting her. Appellant believed that he hurt her because he broke off their relationship.

Appellant stated that he knew his next victim's age from the beginning. Appellant stated, "[W]ell, because of her age, it was a sexual assault, but I didn't force myself on her." He admitted to giving her alcohol, but he said that she came onto him and that he was drunk at the time.

Appellant admitted to being sexually attracted to his first two victims, but he denied any such attraction to his niece. Appellant explained that he was "constantly intoxicated" during the time he was around his niece and that he does not remember sexually assaulting her. Appellant stated that he acted out sexually because of alcohol but that he no longer has a problem abusing alcohol. Appellant testified he has renewed his faith in God, which will help him maintain sobriety. Appellant also stated that he planned on attending Alcoholics Anonymous meetings when released from prison.

The jury found beyond a reasonable doubt that Appellant is an SVP, and the trial court signed a final judgment and commitment order thereby committing Appellant for involuntary treatment and supervision. This appeal followed.

*The SVP Act*

The SVP Act provides for the civil commitment of sexually violent predators based on legislative findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amendable to traditional mental illness treatment modalities and that makes

6

the predators likely to engage in repeated predatory acts of sexual violence." *Id.* § 841.001. A civil commitment proceeding under the SVP Act incorporates the "beyond a reasonable doubt" burden of proof that is applicable to criminal cases. *In re Commitment of Fisher*, 164 S.W.3d 637, 641 (Tex. 2005). As such, to civilly commit a person under the SVP Act, the State must prove beyond a reasonable doubt that the person is a sexually violent predator. HEALTH & SAFETY § 841.062(a). A person is a "sexually violent predator" if the person (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A "[b]ehavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). "[T]he [SVP] Act requires evidence of both repeat past sexually violent behavior and a present condition that creates a likelihood of such conduct in the future." *In re Commitment of Stoddard*, 619 S.W.3d 665, 678 (Tex. 2020); *see In re Commitment of Cordova*, 618 S.W.3d 904, 916 (Tex. App.—El Paso 2021, no pet.) ("Only these two elements need to be proven by the State, and courts have uniformly rejected attempts by appellants to incorporate additional sub-requirements into these elements.").

In explaining the applicable factual sufficiency review, the Texas Supreme Court held that we are to consider whether, in light of the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is a sexually violent predator. *Stoddard*, 619 S.W.3d at 668. "In so doing, [we] may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony, and [we] must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." *Id.* The

7

evidence is factually insufficient to support the verdict if "the disputed evidence that a reasonable factfinder could not have credited in favor of" the sexually violent predator finding, "along with the undisputed facts that do not support [that] finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at 675; *In re Commitment of Tryon*, 654 S.W.3d 29, 41 (Tex. App.—Eastland 2022, pet. denied).

*Analysis*

Appellant argues that the evidence is factually insufficient to support a finding that Appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* HEALTH & SAFETY § 841.003(a)(2). He does not challenge the sufficiency of the evidence establishing that he is a repeat sexually violent offender. Rather, Appellant contends that the evidence "proves that [he] was sexually deviant in the past but is not factually sufficient to support a finding that [Appellant] is a sexually violent predator today." We disagree.

The jury heard evidence that Appellant was convicted of aggravated sexual assault of a child and three counts of sexual assault of a child against two separate victims in two separate counties, following which he was not deterred, but rather, he then committed and was convicted of four counts of indecency with a child against a third victim. Dr. Dunham testified that, based on his evaluation of Appellant, it was his opinion that Appellant suffered from a congenital or acquired condition that affected his emotional or volitional capacity, predisposing him to commit sexually violent offenses, to the extent that he was a menace to the health and safety of another. His testimony was consistent with the legal definition of behavioral abnormality. *See id.* § 841.002(2). Dr. Dunham diagnosed Appellant with pedophilic disorder, antisocial behavior, and alcohol use disorder. Dr. Dunham discussed Appellant's past sexual deviancy, while also detailing how this past

8

behavior affected his determination that Appellant was a sexually violent predator presently. *See Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) ("As we have recognized, previous instances of violent behavior are an important indicator of future violent tendencies.") (internal quotation marks and alteration omitted). Dr. Dunham described his careful consideration of various research-based factors in arriving at his opinion, set out the factual basis of his assessment, and discussed Appellant's risk and protective factors. He also explained his upward clinical adjustment of the Static-99 score resulting in Appellant's well-above average risk of reoffending.

Whether disputed evidence that a reasonable factfinder could not have credited in favor of the verdict, or as undisputed facts contrary to the verdict, we weigh Appellant's testimony that his alcohol problem, which is in remission, is a primary cause for his offenses and Dr. Dunham's testimony that Appellant had a moderate PCL-R score. However, after reviewing the entire record, we cannot conclude that this contrary evidence is so significant that the factfinder could not have determined beyond a reasonable doubt that Appellant presently has a behavioral abnormality that makes him likely to again engage in predatory acts of sexual violence. *See* HEALTH & SAFETY §§ 841.002(2), 841.003; *Stoddard*, 619 S.W.3d at 668; *Tryon*, 654 S.W.3d at 41; *see also In re Commitment of Williams*, 539 S.W.3d 429, 440–41 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that an offender's Static-99R score that reflected a "low-moderate" risk of reoffending did not render the evidence factually insufficient on the SVP issue because the State presented evidence that despite the low score, the offender's risk of reoffending was higher than the "low-moderate" range); *In re Commitment of James*, No. 01-19-00734-CV, 2021 WL 4597105, at *10–11 (Tex. App.—Houston [1st Dist.] Oct. 7, 2021, pet. denied) (mem. op.) (holding that factually sufficient

evidence supported the jury's SVP finding where the record contained: (1) evidence that the offender had been convicted of multiple sexually violent offenses, including details of the offenses; (2) experts' testimony about the offender's risk and protective factors; (3) the offender's denial of the sexual offenses or that he has a sexual drive; and (4) the offender's "average" scores on the Static-99R and PCL-R, as well as the experts' opinions on the limitations of those tests). Therefore, we conclude that the evidence is factually sufficient to support the jury's verdict. *See Stoddard*, 619 S.W.3d at 678. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

August 21, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.