**Reversed and Remanded; Opinion Filed April 28, 2020**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00144-CV

### IN RE: THE COMMITMENT OF DAVID EDWARD JOINER

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV1870002**

## MEMORANDUM OPINION

Before Justices Osborne, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

In this civil commitment proceeding, the State of Texas petitioned to have

David Edward Joiner declared a sexually violent predator (SVP) under the Civil

Commitment of Sexually Violent Predators Act (the Act). *See* TEX. HEALTH &

SAFETY CODE ANN. §§ 841.001–.153. After the jury found beyond a reasonable

doubt that Joiner is an SVP, the trial court rendered judgment on the jury's verdict

and ordered that Joiner be civilly committed for sex offender treatment and

supervision. In six issues, Joiner challenges the legal and factual sufficiency of the

evidence to support the jury's finding that he has a behavioral abnormality that

makes him likely to engage in a predatory act of sexual violence. He also contends the trial court erred by admitting into evidence the curriculum vitae and report of Dr. Darrell Turner after excluding the State's expert witness from testifying. We reverse the trial court's judgment and remand for further proceedings.

## I. Background

Joiner has been in prison for over thirty years, serving sentences for three convictions for aggravated sexual assault and three convictions for burglary. At trial, Joiner described himself as a "cat burglarizer" because he broke into houses at night when people were at home sleeping. He testified that he burglarized at least twenty-five or thirty homes. He also testified that he had sexual intercourse with five or more women who awoke to find him in their homes. Joiner stated that he did not plan these sexual assaults—he broke into houses for the money, but sometimes lust took over if he saw a woman half-dressed. He claimed that the intercourse was always consensual—if a woman did not scream, he could usually talk her into having sex with him. He believes the police made up all of the allegations that he used weapons and threatened the women.

Joiner admitted that while incarcerated, he assaulted a couple of inmates. In 2013, a female officer reported that appellant threatened to drag her into his cell and rape her. Joiner denied ever making such a threat and claimed that the officer lied. He also denied sending a letter to another female corrections officer, attempting to initiate a romantic relationship with her. When asked how many

–2–

disciplinary cases he had accumulated for masturbation, he estimated that it was probably more than twenty but definitely less than fifty. He said that he masturbated in the presence of female guards to get their attention. Joiner agreed that he had started fires while in prison, but he could not remember how many. When asked about his disciplinary cases for weapons possession and possession of a cell phone, he admitted to the weapons possession but claimed that the cell phone belonged to his cellmate.

When asked if he had been diagnosed with any conditions, Joiner testified he knew that he had been diagnosed with schizophrenia, but he was taking medications for it. He denied any knowledge of having a bipolar disorder or an anti-social personality disorder. When asked if he had received inpatient mental health treatment off and on for over twelve years, he stated he did not know. He also did not recall that one of his "target problems" was taking medications as prescribed. Joiner denied having hallucinations or hearing voices, except for Michael and Vanessa. Michael was a good friend who is now deceased, and Vanessa was an old girlfriend. They have talked to him daily for about thirty years. When confronted with statements from records, Joiner agreed that maybe he had once said that the voices were telling him to hurt himself and others.

In November 2017, the Texas Department of Criminal Justice Civil Commitment Multidisciplinary Team asked Dr. Darrell Turner, a clinical psychologist, to conduct a forensic evaluation of Joiner to assist in determining

–3–

whether Joiner had a behavioral abnormality that would make him likely to engage in future predatory acts of sexual violence. Dr. Turner evaluated Joiner and prepared a written "Evaluation For Behavioral Abnormality" (report). In his report, Dr. Turner concluded that Joiner suffers from "a behavioral abnormality that makes him likely to engage in future acts of predatory sexual violence." In 2018, the State filed a petition requesting that Joiner be found to be an SVP and that he be committed pursuant to the Act. In response to Joiner's discovery requests, the State identified and produced Dr. Turner's report as part of its "Civil Commitment Referral Packet."

The State planned to have Dr. Randall Price testify as its expert at the trial. However, the State failed to designate Dr. Price timely in its discovery responses, and the trial court excluded Dr. Price from testifying. The trial court admitted Dr. Turner's report, his curriculum vitae (CV), an opinion letter[1] and an affidavit[2] into evidence over Joiner's objection. Although Dr. Turner had not been designated as an expert witness in the case, and the trial court barred the State from calling Dr. Turner to testify, he was present at the trial. The trial court stated that Joiner could call Dr. Turner to cross-examine him concerning his report.

---

[1] On October 28, 2018, Dr. Turner wrote a letter to the State verifying that he had conducted the behavioral abnormality evaluation of Joiner on November 3, 2017, pursuant to his MDT contract. He further stated that upon review of additional information provided by the State, his opinion remained the same.

[2] Dr. Turner signed an affidavit affirming that he was the custodian of Joiner's records, specifically the 10-page report.

At the trial, Joiner was the only witness who testified before the jury. The jury found beyond a reasonable doubt that Joiner is an SVP. The trial court accepted that finding and ordered that Joiner be civilly committed upon his release from prison.

We note that this Court recently issued its opinion in an almost identical case, *In re: The Commitment of Kevin Joe Mumford*, Case No. 05-19-00186-CV. In *Mumford*, and this case, the attorneys raised the same issues with respect to the same ruling by the same trial judge concerning the admissibility of a similar report prepared by the same expert. Given the similarities, we follow our decision in *Mumford*.

## II. Discussion

### A. Sexually Violent Predator Act

In a suit to commit a person as a sexually violent predator, the State must prove beyond a reasonable doubt that the person (i) is a "repeat sexually violent offender" and (ii) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." HEALTH & SAFETY §§ 841.003(a), 841.062(a); *see also id*. § 841.002(8) (defining "sexually violent offense"). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id*. § 841.003(b). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity,

–5–

predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). A predatory act is "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5).

## B. Sufficiency of the Evidence

In his fourth issue, Joiner asserts the evidence is legally insufficient to support the jury's finding that he is a sexually violent predator. Because the Act requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator, we review the legal sufficiency of the evidence using the appellate standard of review for criminal cases. *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *8 (Tex. App.—Dallas Feb. 20, 2018, no pet.) (mem. op.); *In re Commitment of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the elements required for commitment under the Act beyond a reasonable doubt. *In re Commitment of Rogers*, No. 05-17-00010-CV, 2018 WL 360047, at *5 (Tex. App.—Dallas Jan. 11, 2018, pet. denied) (mem. op.); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "It is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts." *In re Commitment of Williams*, 539 S.W.3d 429, 437 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *In re Commitment of*

*Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)). We consider all the evidence admitted before the fact finder, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

Joiner does not dispute the first element—that he is a repeat sexually violent offender. His issues on appeal pertain to the second element's requirement of proof that he suffers from a behavioral abnormality. Joiner argues the evidence is insufficient to support the jury's finding that he is an SVP because the only evidence that he has a behavioral abnormality is Dr. Turner's report, and the trial court erred by admitting it. However, under the applicable standard of review, we consider "all evidence in the record of the trial, whether it was admissible or inadmissible." *Winfrey*, 393 S.W.3d at 767 (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). Therefore, we include Dr. Turner's report in our consideration of the evidence.

Joiner argues that even if we consider Dr. Turner's report, the evidence is still insufficient to prove beyond a reasonable doubt that he has a behavioral abnormality. In the report, Dr. Turner included a summary of his findings:

> Mr. Joiner is a repeat sexual offender with three known victims (four if the December victim is included) and five to six admitted victims. All of his victims were strangers, and he sexually assaulted them in the process of burglarizing their homes. He admitted to enjoying burglarizing homes. One victim was a minor — age 16. The sexual assaults were violent in nature, especially given his use of knives, threats of violence and death to the victims and their families, and his

claim of having a gun in one offense. These offenses occurred while on supervised releases for previous burglaries. He denied and minimized his substance use history today despite records that indicate otherwise. He denied being intoxicated at the time of any of his offenses. He has a high number of disciplinary cases and major disciplinary cases and a high number of sexual misconduct cases. He admitted to masturbating purposefully in front of female staff with a desire that they were aware of his actions toward them. Additionally, the offender does not outright deny his offenses, but he states that he does not remember some of them, and he admits to others for which he was not caught. Also, he minimizes to a large degree his actions in the offenses that he does remember or acknowledge. His claims that he calmed his victims by sitting them down and talking to them until they relaxed and allowed him to have sex are in direct contrast to the ambush-style armed offenses that are described in the records. He claims on one occasion to have given his knife to one victim to show that he meant no harm, and she dropped it on the ground. He claims that the sexual assaults were opportunistic in nature and not planned, and that he sexually assaulted victims depending on whether he was in the mood to have sex.

* * *

[T]his offender lacks insight into his offending, does not think he needs sex offender treatment, and has committed a great deal of sexual offenses across a long period of time, even after capture and punishment. He also minimizes his offenses to a large degree and, therefore, underestimates the impact of his offending on his victims. His laughter during the discussion of the offenses today was also incongruent with expected affective presentation.

The two most robust predictors of sexual recidivism, especially when coexisting, are antisociality and sexual deviance. There is some evidence of sexual deviance given the repeated violent sexual offending using threats and weapons against stranger victims. He denies today that the suffering of these victims was particularly arousing to him, but additional clinical assessment may provide other evidence (i.e., penile plethysmograph). Regardless, the acts themselves were sexually deviant, as has been his behavior while in prison. There is strong evidence of antisociality and psychopathy,

thus his risk in both of the primary risk categories is high. His Static score is well-above average, and his PCL-R facet four score is 8/10.[3]

In sum, based upon the records reviewed, the clinical interview, and testing conducted, taking all variables into consideration and using a clinically-adjusted actuarial approach, it is the opinion of the undersigned that Mr. Joiner represents a high risk for sexual re-offense and <u>DOES suffer from a behavioral abnormality that makes him likely to engage in future acts of predatory sexual violence</u>.

Joiner does not challenge the substance of Dr. Turner's written report. Instead, he argues that without Dr. Turner's inadmissible written report, the jury had no evidence that (i) he has a behavioral abnormality, and (ii) he is likely to commit a predatory sexually violent act. He urges that the only evidence legitimately before the jury was the fact that he had been convicted of three aggravated sexual assaults over thirty years ago. He describes these assaults as crimes of opportunity, committed during some of his "cat burglarizing" offenses.

Because we consider all the evidence admitted before the fact finder, including improperly admitted evidence, *see Winfrey*, 393 S.W.3d 767, we must consider Dr. Turner's written report. According to the report, Dr. Turner based his conclusion that Joiner "suffer[s] from a behavioral abnormality that makes him likely to engage in future acts of predatory sexual violence" on his forensic interview of Joiner, his administration of the Static–99R assessment and the Hare

---

[3] The Static–99R assessment is a list of ten risk factors used to score whether someone has a behavioral abnormality. The Psychopathy Checklist Revised (PCLR) is an assessment of whether the individual meets criteria as a psychopath. *See Brown*, 2018 WL 947904, at *4.

Psychopathy Checklist–Revised (PCLR), and his review of records provided by the Texas Department of Criminal Justice Civil Commitment Multidisciplinary Team. Dr. Turner found that Joiner's score of six on the Static–99R assessment signified that Joiner's risk of re-offending was well above average. Dr. Turner also found that Joiner's PCLR score indicated a high level of psychopathic characteristics. Based on his interview of Joiner, Dr. Turner found that Joiner minimized his aggravated sexual assault offenses, denied that he threatened his victims with knives and a gun, and admitted to a number of prison disciplinary cases for sexual offenses. Dr. Turner found no history that Joiner had received sex-offender treatment. Furthermore, Joiner told Dr. Turner that he did not need sex-offender treatment.

After considering all the evidence, we conclude a reasonable juror could have found beyond a reasonable doubt that Joiner suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We overrule Joiner's fourth issue.

## C. Admissibility of Dr. Turner's Report

In his first issue, Joiner contends the trial court erred by admitting Dr. Turner's CV, report, and opinion letter into evidence under the business-records exception to the rule against the admission of hearsay evidence. Joiner argues that all three of these documents were prepared in anticipation of trial and, therefore, were not admissible as business records. In response, the State asserts that because

Joiner's issue on appeal does not comport with his objections in the trial court, he did not properly preserve this issue for appellate review.

Evidentiary rulings are committed to the trial court's sound discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). A trial court abuses its discretion only when it rules without regard for any guiding rules or principles, and we must uphold a trial court's evidentiary ruling if there is any legitimate basis to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Even if a court erroneously admitted improper evidence, the complaining party must show that the error probably resulted in an improper judgment. TEX. R. APP. P. 44.1. To warrant reversal, this typically requires a showing that the judgment turned on the particular evidence in question. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In making this determination, we review the entire record. *Id.*

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. TEX. RS. EVID. 801(d), 802. The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004) (citing *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 301 (Tex. 1962)).

Under the business-records exception, evidence that is otherwise

–11–

inadmissible as hearsay may be admissible if the proponent of the evidence demonstrates that (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to create such records; (3) the records were created at or near the time of the event recorded; and (4) the records were created by, or from information transmitted by, a person with knowledge who was acting in the regular course of business. TEX. R. EVID. 803(6); *see In re E.A.K.*, 192 S.W.3d 133, 141 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). These prerequisites to admissibility may be provided in the form of an affidavit that complies with rule 902(10). TEX. R. EVID. 803(6)(D).

A business record meeting all of the requirements of rule 803(6) may be admitted into evidence, regardless of whether the declarant is available as a witness, if "the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." TEX. R. EVID. 803(6)(E). Documents prepared in anticipation of litigation generally lack the trustworthiness necessary for admission under rule 803(6). *See Ortega v. Cach, LLC*, 396 S.W.3d 622, 630 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

The State argues that Joiner did not object to the admission of the report on the ground that it was prepared in anticipation of litigation. We disagree. On the first day of trial, prior to jury selection, the trial court conducted a hearing to consider Joiner's motion to exclude the State's witness list and the State's list of

witnesses with knowledge. Specifically, Joiner's attorney sought to exclude Dr. Turner's testimony. The State responded that it did not intend to call Dr. Turner as an expert; instead, Dr. Turner would testify as the custodian of the business records the State intended to use as trial exhibits, including Dr. Turner's CV, his report, and a subsequent letter re-confirming the opinions he provided in his report. The judge noted that Joiner's attorney wanted him to exclude not only Dr. Turner's testimony but all of the records that the State had tendered and asked, "is that correct?" Joiner's attorney responded: "Yes, Your Honor. The initial bunch of records were completed in furtherance of litigation, not for a business purpose record. And we would seek to strike those because they were completed in litigation. In addition, the CV of the expert would only be going to bolster those records that were created in furtherance of litigation."

The trial court allowed Dr. Turner to testify outside the presence of the jury. Dr. Turner testified that he was the custodian of his CV, his report pertaining to Joiner, and his subsequent opinion letter reconfirming the opinions stated in his report. Joiner's attorney again objected, arguing that the CV and letter were not regularly kept business documents but were prepared for this litigation. The trial court admitted the records over Joiner's objections.

For Joiner's objection to have been sufficient, it had to be sufficiently specific "to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). During the discussion of Joiner's motion to exclude the State's

–13–

witness list, the prosecutor maintained that the report would be offered as a business record, and Joiner's counsel argued the report was prepared in anticipation of litigation. Even though the admissibility of the report was not the precise matter before the trial court when Joiner first made the objection, it was relevant to the discussion of the motion to exclude Dr. Turner as an expert witness. Further, it appears from the record that Joiner's attorney renewed this objection at the close of Dr. Turner's testimony. Accordingly, we conclude this objection was preserved for appellate review.

We next consider whether the report was prepared in anticipation of litigation. The report states that Dr. Turner's forensic evaluation of Joiner "was conducted pursuant to request from the Texas Department of Criminal Justice under the authority of the Texas Health and Safety Code, Title 11, Section 852 [sic]." There is no section 852 in Title 11 of the Health and Safety Code, but the heading of Title 11 is "Civil Commitment of Sexually Violent Predators." The report also states the reason Joiner was referred to Dr. Turner:

> Mr. David Joiner is a 55-year-old male who was referred by the TDCJ Civil Commitment Multidisciplinary Team for a forensic psychological evaluation to assist in the determination as to whether or not the offender has a behavioral abnormality that makes him likely to engage in future predatory acts of sexual violence.

Under Title 11, if a person has two prior convictions for sexually violent offenses and is within twenty-four months of being released from incarceration, the Texas Department of Criminal Justice gives notice to a multidisciplinary team. HEALTH

–14–

& SAFETY § 841.021. The multidisciplinary team then assesses "whether the person is likely to commit a sexually violent offense after release." *Id.* §§ 841.022(c)(1), .023(a). In making their assessment, the Texas Department of Justice "may contract for the expert services required by this subsection." *Id.* § 841.023(a). "If as a result of the assessment the Texas Department of Criminal Justice believes that the person suffers from a behavioral abnormality," the Department must give notice to the State's attorney. *Id.* § 841.023(b). The State's attorney may then file a petition alleging that the person is a sexually violent predator. *Id.* § 841.041. If the trier of fact "determines that the person is a sexually violent predator, the judge shall commit the person for treatment and supervision." *Id.* § 841.081(a). Here, because Dr. Turner's report states it was prepared pursuant to a referral from a multidisciplinary team under Title 11, the report was prepared in anticipation of litigation over whether Joiner should be committed as a sexually violent predator.

The State argues that the report was not prepared in anticipation of litigation because Dr. Turner interviewed Joiner on November 3, 2017, more than three months before the State filed its petition to commit Joiner on February 7, 2018. However, the report's only purpose was to determine whether to seek commitment of Joiner, which could be achieved only by bringing this suit. *See id.* § 841.023.

The State also argues that a person may be civilly committed under the Act solely on documentary evidence, citing section 841.061(e): "The attorney

–15–

representing the state may rely on the petition filed under Section 841.041 and supplement the petition with documentary evidence *or* live testimony." *Id.* § 841.061(e) (emphasis added). No provision of the Act purports to set aside the rule against the admission of hearsay evidence except as permitted by the rules. Nor does any provision of the Act set aside the requirement that documents admitted under the business-records exception to the hearsay rule be trustworthy.

We conclude that Dr. Turner's report demonstrates that the circumstances of its preparation indicate a lack of trustworthiness because it was prepared in anticipation of litigation. *See Ortega*, 396 S.W.3d at 630. Therefore, the trial court abused its discretion by admitting the report into evidence.

Although we have determined that the trial court erred by admitting the report, we may not reverse the trial court's judgment unless we determine the error probably caused the rendition of an improper judgment. TEX. R. APP. 44.1(a). In this case, Dr. Turner's report was the only evidence that Joiner "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Without evidence to support that finding, the jury could not have found Joiner was a sexually violent predator. *See* HEALTH & SAFETY § 841.003(a)(2). Accordingly, we conclude the trial court's admission of Dr. Turner's report over Joiner's objection was reversible error.

We sustain Joiner's first issue. Having sustained Joiner's first issue, we need not consider his remaining issues.

### III.  Conclusion

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

190144f.p05

/Bill Pedersen, III//
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE:  THE COMMITMENT OF
DAVID EDWARD JOINER

No. 05-19-00144-CV

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. CV1870002.
Opinion delivered by Justice
Pedersen, III. Justices Osborne and
Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant David Edward Joiner recover his costs of this appeal from appellee The State of Texas.

Judgment entered this 28th day of April, 2020.