**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00205-CV**
_____

**IN RE COMMITMENT OF STEPHEN PAUL BORDAGES**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. 1003-Y**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Stephen Paul Bordages as a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.001-.153 (SVP statute). A jury found that Bordages is a sexually violent predator. The trial court rendered a final judgment and order of civil commitment, and Bordages appealed. In issues one and two, Bordages challenges the legal and factual sufficiency of the evidence supporting the jury's finding. In issue three, Bordages argues that he is entitled to a new trial because the State's expert witnesses' opinions that he has a behavioral abnormality were based on an improper legal definition. We affirm the trial court's judgment and order of civil commitment.

1

The Evidence

Dr. Antoinette McGarrahan, a psychologist specializing in forensic psychology and neuropsychology, testified that after reviewing all the records and interviewing Bordages, she determined that Bordages suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. McGarrahan testified that Bordages is sexually deviant and has repeatedly engaged in sexually deviant, abhorrent behavior for many years, and she explained that despite treatment and punishment efforts, Bordages's sexual deviancy has persisted. McGarrahan also testified that in 1987, Bordages sustained a traumatic brain injury in a motor vehicle accident, which led him to be sexually impulsive. According to McGarrahan, based on actuarial instruments, Bordages was at a high risk to reoffend.

McGarrahan explained that in forming her opinion she relied upon Bordages's convictions and allegations of other sexual offenses, as well as her finding that Bordages is sexually deviant. McGarrahan testified that Bordages had been convicted of animal cruelty, burglary of a habitation with intent to commit assault and indecency with a child by exposure, attempted sexual assault of a child, indecency with a child by contact, indecent exposure, and attempted aggravated kidnapping with intent to commit a sexual assault. McGarrahan explained that Bordages also received deferred adjudication for failing to comply with sex offender registration, and Bordages failed to complete sex offender treatment because he

2

denied responsibility for his offenses. McGarrahan testified that while on probation, Bordages committed the offense of attempted aggravated kidnapping, for which he is currently incarcerated.

McGarrahan testified that she diagnosed Bordages with exhibitionistic disorder, paraphilia, frotteuristic paraphilia, and unspecified paraphilia. McGarrahan explained that paraphilias are congenital or acquired chronic conditions that affect a person's emotional or volitional capacity and that can predispose a person to commit a predatory act of sexual violence. McGarrahan testified that Bordages is still sexually deviant, and although Bordages may meet the criteria for a mild neurocognitive disorder, McGarrahan testified that Bordages's brain injury is more of an excuse for this behavior. According to McGarrahan, if Bordages does have a neurocognitive disorder that causes his sexual acting out, he would still have an acquired condition that affects his emotional or volitional capacity and predisposes him to commit a predatory act of sexual violence. McGarrahan explained that Bordages has a behavioral abnormality whether he is sexually offending because of a paraphilia, a brain injury, or a combination of both, and based on Bordages's medical history, traditional treatment modalities for his brain injury have failed. McGarrahan further testified that, although Bordages does not have an anti-social personality disorder, he does have antisocial attitudes, beliefs, and behaviors.

McGarrahan identified risk factors that make Bordages more likely to engage in sexually violent behavior, including sexual preoccupation, lack of an emotionally intimate adult relationship, lack of anger management skills, denial and victim stance, persistence after punishment, exhibitionism, antisocial attitude, and psychopathic personality traits, as well as a victim pool ranging from toddler to older adults and including males, females, and strangers. McGarrahan testified that Bordages offended against non-consenting underage individuals despite being married and having access to an age appropriate consenting partner, and it was significant that Bordages committed offenses spanning from young adulthood until his late forties, when risk typically declines. According to McGarrahan, Bordages's offenses are evidence that his emotional and volitional capacity have been affected and that he is unable to control his emotions, urges, and desires.

McGarrahan also considered Bordages's disciplinary history during his periods of incarceration, which indicates that Bordages engaged in sexual misconduct by masturbating in public and was accused of assaulting an officer. McGarrahan testified that during his current incarceration, Bordages was disciplined for attempting to establish an inappropriate relationship with a prison guard, and McGarrahan explained that Bordages's misconduct during prison is evidence that his emotional and volitional capacities have been affected. According to McGarrahan, being incarcerated has not stopped Bordages's offending behavior and

4

medication has not helped Bordages control his sexual impulses. McGarrahan testified that Bordages is a menace to the health and safety of another person because his conditions are chronic and untreated, and Bordages has shown no ability to control his behaviors.

McGarrahan also testified that Bordages's score on the PCL-R or the Hare Psychopathy Checklist-Revised showed that he had a moderate degree of psychopathic characteristics, and McGarrahan explained that a person need not be a psychopath to have a behavioral abnormality. Additionally, McGarrahan testified that Bordages's actuarial scores placed him at a high risk to reoffend in a sexual manner, and Bordages has not had sex offender treatment because he claims he does not need it. McGarrahan testified that Bordages is seven times more likely to reoffend than a typical sex offender, placing Bordages in the 99th percentile. According to McGarrahan, Bordages suffers from a behavioral abnormality and falls into a small but extremely dangerous group of sex offenders who are not amenable to traditional treatment modalities.

Psychiatrist Dr. Sheri Gaines testified that she evaluated Bordages and relied upon principles of psychiatry in doing so. Gaines explained that the standard methodology involves a face-to-face interview, as well as reviewing police and prison records, victim statements, depositions, reports of other experts, and other ancillary information. Gaines testified that she interviewed Bordages for

5

approximately three hours and reviewed the records from McGarrahan, as well as Bordages's deposition. Gaines opined that, based on her education, training, experience, and methodology, Bordages suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

According to Gaines, the main reasons for her findings were Bordages's risk factors of sexual deviance, the ages of the nonconsenting victims, the length of time he has offended, and his current inability to control his sexual behavior in prison. Gaines explained that the facts and data surrounding Bordages's sexual convictions and unadjudicated offenses also constitute risk factors and helped her to formulate her opinion about whether Bordages is likely to reoffend. Gaines testified that other risk factors included the fact that Bordages reoffended after receiving sex offender treatment and being punished, as well as stranger victims, number of victims, victim stance, denial, lack of insight, and lack of empathy. In addition, Gaines testified that Bordages had psychopathic traits, including grandiosity, parasitic lifestyle, superficial charm, and lying. Gaines also testified that Bordages had received disciplinary cases in prison for public masturbation and propositioning.

Gaines explained that she diagnosed Bordages with exhibitionist disorder and adult sexual abuse by a non-spouse or non-partner. Gaines testified that based on her review of the records, Bordages uses his brain injury as an excuse, bringing it up whenever he faces a consequence for his bad behavior. According to Gaines, the

6

clinical presentation concerning Bordages's brain injury was inconsistent, and while brain injuries can affect a person's sexual urges, the offenses for which Bordages was convicted were not described as impulsive. Gaines explained that while Bordages could have a neurocognitive disorder due to his brain injury, the records show that Bordages received traditional treatment modalities for his brain injury, and those traditional treatments were obviously unsuccessful because Bordages continued to offend.

Gaines identified positive or protective factors that might decrease Bordages's risk of reoffending, including family support, education level, and participation in prison programs, but Gaines explained that those factors do not change her opinion that Bordages suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. According to Gaines, the evidence shows that Bordages has a congenital or acquired condition that has affected his emotional or volitional capacity and that he is a menace to the health and safety of others.

Bordages testified that he is currently incarcerated for attempted aggravated kidnaping and that he was on probation for failing to comply with sex offender registration when he committed the offense. Bordages testified that he committed his first sexual offense in April 2004, but he denied the allegations and claimed it was consensual. Bordages testified that in June 2004, he was charged with committing his second sexual offenses, indecency with a child by contact and

attempted sexual assault of a child, but he denied committing the offenses, explaining that he pleaded guilty on the advice of counsel. Bordages also denied the allegations regarding his 2014 conviction for indecent exposure as well as other allegations of inappropriate sexual behavior.

Bordages admitted that while in prison, he had received disciplinary cases that involved sexual misconduct. Bordages testified that during his incarceration, he received disciplinary cases for masturbating in public and attempting to establish an inappropriate relationship with a correctional officer, but he claimed the allegations were false. Bordages also testified that he suffered a brain injury in 1987 that affected his short-term memory and caused depression, but he denied that the injury caused him to have any impulse or behavioral control issues. Bordages explained that he takes medication for his mood swings and that he was taking the medication when he allegedly committed the offense for which he is currently incarcerated. According to Bordages, he is not a sex offender, and he was falsely accused of committing the sexual offenses of which he was convicted. Bordages explained that he did not complete sex offender treatment, and he was charged with committing another sexually violent offense after having attended three or four months of sex offender treatment. According to Bordages, he requested sex offender treatment during his current incarceration, but he did not receive a response.

Psychologist Dr. Marisa Mauro testified that she met Bordages for approximately five hours. Mauro testified that after reviewing all the records and interviewing Bordages, she determined that Bordages does not suffer from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Mauro explained that she determined that Bordages has an exhibitionist disorder and a neurocognitive disorder due to his traumatic brain injury that causes his sexual behavior, and because there are appropriate treatment modalities to treat his particular condition, Bordages does not fall in the small but extremely dangerous group of sexually violent predators that the SVP statute seeks to identify. According to Mauro, Bordages's sexual preoccupation and inappropriate sexual behaviors are consistent with a traumatic brain injury, and sex offender treatment is not a typical treatment for a traumatic brain injury. Mauro testified that Bordages does not have a behavioral abnormality as defined in the SVP statute, because Bordages's neurocognitive disorder can be controlled through treatment with a neurologist, psychiatrist, and a psychologist, combined with medication and possible rehabilitation.

Mauro also testified that Bordages's score on the PCL-R or the Hare Psychopathy Checklist-Revised showed that he falls within the range designated as mixed psychopathic features, but Mauro opined that Bordages is not a psychopath. Additionally, Mauro testified that although she used actuarial instruments in

9

conducting Bordages's evaluation, which showed that Bordages is at a moderate to high risk of reoffending sexually, Mauro did not place much emphasis on the results because she did not find Bordages to be a person meant to be identified by the SVP statute. According to Mauro, Bordages has family support to help him obtain treatment and provide him with stability. However, Mauro also testified that Bordages had reoffended after receiving neuro-rehabilitation and medication therapy and that there was no guarantee that Bordages would receive the treatments she had suggested.

Analysis

In issues one and two, Bordages argues that the evidence is legally and factually insufficient to support the jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. According to Bordages, the State's experts' opinions cannot support the verdict, because the evidence upon which the opinions are based proves that Bordages is not an "extremely dangerous" sex offender who has a "serious difficulty controlling [his] behavior."

In an SVP civil commitment proceeding, the State bears the burden to prove beyond a reasonable doubt that the respondent is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.062; *In re Commitment of Morales*, 98 S.W.3d 288, 291 (Tex. App.—Beaumont 2003, pet. denied). A person is a sexually

10

violent predator if the person "is a repeat sexually violent offender[] and []suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

As discussed above, Bordages testified regarding his convictions for burglary of a habitation with intent to commit sexual assault, indecency with a child by

11

exposure, attempted sexual assault of a child, indecency with a child by contact, attempted aggravated kidnapping with intent to commit a sexual assault, and indecent exposure, and that he received disciplinary cases involving sexual misconduct during his incarceration. McGarrahan opined that Bordages suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. McGarrahan testified that Bordages is sexually deviant and that his deviancy has persisted despite treatment and punishment efforts, and he has a high risk of reoffending. McGarrahan testified that Bordages has a behavioral abnormality whether he is sexually offending because of a paraphilia, a brain injury, or a combination of both, and that his medical history shows that traditional treatment modalities for his brain injury have failed.

The jury also heard Gaines testify that Bordages suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence, and the main reasons for her findings were Bordages's risk factors of sexual deviance, the ages of the victims, the length of time he has offended, and his current inability to control his sexual behavior in prison. Gaines testified that the clinical presentation concerning Bordages's brain injury was inconsistent, and that Bordages uses his brain injury as an excuse. The jury heard Gaines's testimony that Bordages could have a neurocognitive disorder due to his brain injury, but the records show

12

that Bordages received traditional treatment modalities and that they were unsuccessful.

The jury also considered Mauro's testimony that she determined that Bordages does not suffer from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, and that Bordages has a neurocognitive disorder due to his traumatic brain injury that causes his sexual behavior, which can be treated with appropriate treatment modalities. Mauro testified that Bordages is at a moderate to high risk of reoffending sexually but does not fall in the small but extremely dangerous group of sexually violent predators that the SVP statute seeks to identify.

The jury had sufficient evidence from which to infer Bordages's current dangerousness. *See In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 WL 2616921, at *5 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). As the sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Bordages suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Lowe*, No. 09-14-00098-CV, 2014 WL 4363624, at *2 (Tex. App.—Beaumont Sept. 4, 2014, no pet.) (mem. op.); *see also Wilson*, 2009 WL 2616921, at *5; *Mullens*, 92 S.W.3d at 887. Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Bordages is a sexually

13

violent predator. *See* Tex. Health & Safety Code Ann. § 841.062(a); *Mullens*, 92 S.W.3d at 885. We conclude that the jury's verdict is supported by legally sufficient evidence. We overrule issue one.

In issue two, Bordages argues that the evidence is factually insufficient to support the jury's finding. According to Bordages, the evidence is too meager to support a finding that he is an "extremely dangerous" or "worst of the worst" sex offender. Bordages relies primarily on *In re Commitment of Stoddard*, 601 S.W.3d 879 (Tex. App.—Fort Worth 2019, pet. granted), in which the Fort Worth Court of Appeals reversed the jury's verdict finding Stoddard to be a sexually violent predator. *See Stoddard*, 601 S.W.3d at 891. The Fort Worth Court concluded that the evidence was factually insufficient to prove that Stoddard is a member of a small group of extremely dangerous sex offenders for which civil commitment is warranted. *Id.* at 891-92, 897-98.

The record shows that the criteria and definitions necessary to support a civil commitment under the SVP statute were submitted to the jury and correctly described the severity of the behavioral abnormality and the severity of the danger that must be present to subject the person to civil commitment. *See In re Commitment of Almaguer*, 117 S.W.3d 500, 505 (Tex. App.—Beaumont 2003, pet. denied); *In re Commitment of Wirfs*, No. 09-19-00007-CV, 2020 WL 1879473, at *6 (Tex. App.—Beaumont April 16, 2020, no pet.) (mem. op.). As previously discussed, in

conducting a factual sufficiency review, our task is to consider all the evidence presented and then weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *See Day*, 342 S.W.3d at 213. Thus, comparing facts from this case to other SVP cases deviates from our task in a factual sufficiency review. *See Wirfs*, 2020 WL 1879473, at *6. Having weighed all the evidence in the record, we conclude that the jury could have found, beyond a reasonable doubt, that Bordages was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, and that there is no injustice in the jury's verdict that would require a new trial. *See Day*, 342 S.W.3d at 213. Because the evidence is factually sufficient, we overrule issue two.

In issue three, Bordages complains that McGarrahan's and Gaines's opinions that he has a behavioral abnormality are based on an incorrect definition of "behavioral abnormality." Bordages complains that the record reflects that McGarrahan and Gaines incorrectly believed that the legislative findings in section 841.001 only apply to "extremely dangerous" sex offenders and not to a "behavioral abnormality" determination. *See* Tex. Health & Safety Code Ann. § 841.001 (stating that sexually violent predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities). The record shows that after hearing

15

the parties' arguments, the trial court allowed the experts to reference section 841.001 on the legislative findings, and the trial court stated that the jury could consider whether Bordages was amenable to traditional treatment modalities in determining whether Bordages suffers from a behavioral abnormality. *See In re Commitment of Nicholson*, No. 09-13-00498-CV, 2014 WL 4460417, at *4 (Tex. App.—Beaumont Sept. 11, 2014, no pet.) (mem. op.).

McGarrahan testified that Bordages suffers from a behavioral abnormality and falls into a small but extremely dangerous group of sex offenders who are not amenable to traditional treatment modalities. Gaines testified that Bordages suffers from a behavioral abnormality, and that the traditional treatment modalities that Bordages received for his brain injury were unsuccessful. We conclude that Bordages offers no support from the record for his argument that McGarrahan or Gaines used an incorrect definition of "behavioral abnormality." Additionally, because the SVP statute does not include any reference to treatment modalities or the inappropriateness of traditional mental health treatment modalities in its definition of "behavioral abnormality," Bordages fails to offer sufficient argument and authority to explain how McGarrahan's and Gaines's definitions of "behavioral abnormality" materially differ from the definition in section 841.002(2). *See In re Commitment of Williams*, 539 S.W.3d 429, 439 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also* Tex. Health & Safety Code Ann. § 841.002(2). Because

16

Bordages's brief fails to provide appropriate citations to authorities and the record in support of his argument, we overrule Bordages's third issue as inadequately briefed. *See* Tex. R. App. P. 38.1(i); *In re Commitment of Woods*, No. 02-19-00155-CV, 2020 WL 3969958, at *13 (Tex. App.—Fort Worth June 11, 2020, pet. denied) (mem. op.). Having overruled each of Bordages's issues, we affirm the trial court's judgment and order of civil commitment.

 AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on May 18, 2020
Opinion Delivered December 17, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.