

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-21-00014-CV |
| IN RE COMMITMENT OF: | § | Appeal from the |
| MONTI CARL KING, | § | 244th Judicial District Court |
| Appellant. | § | of Ector County, Texas |
| | § | (TC# C-19-08-1080-CV) |

# **O P I N I O N**

A jury found that Appellant Monti Carl King is a sexually violent predator (SVP) under the Texas Civil Commitment of Sexually Violent Predators Act (the SVP Act). As a result, the trial court civilly committed him for sex-offender treatment and supervision. Appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding, and he additionally contends that the commitment violates the Due Process Clause because no evidence established that he has serious difficulty controlling his behavior. Finding no error, we affirm.[1]

---

[1] This case was transferred from our sister court in Eastland, and we decide it in accordance with the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

# I. BACKGROUND

## A. Procedural History

In 2005, Appellant pleaded guilty to two counts of sexual assault of his daughter, and one count of sexual assault of his son; both his children were minors at the time of the respective offenses. Appellant received eighteen years' imprisonment for each conviction, with all three convictions running concurrently. In 2019, and before his release from the state prison, the State petitioned to civilly commit Appellant under the SVP Act, which permits commitment of individuals upon a finding that they (1) are a "repeat sexually violent offender;" and (2) suffer "from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX.HEALTH & SAFETY CODE ANN. § 841.003(a)(1), (2). Appellant filed an answer denying the State's allegations and asserting that, among others, Chapter 841 of the Health and Safety Code was unconstitutional as applied to him because it is vague, thereby violating his federal due process rights made applicable through the Fourteenth Amendment.

The case was tried to a jury that found both predicates for civil commitment under the SVP Act beyond a reasonable doubt. Because Appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding, we recite the testimony below at some length. And because the main thrust of Appellant's challenge contends that the conclusions of the State's expert witness are conclusory and speculative—such that they can be discounted without an objection to admissibility being lodge below—we begin with his testimony.

## B. Dr. Michael Arambula's Testimony

### 1. Dr. Arambula's credentials and methodology

At trial, the State presented testimony from Dr. Michael Arambula, a licensed medical doctor and pharmacist who describes his private practice as encompassing "General and Forensic

Psychiatry, Clinical Pharmacology." He is board certified in forensics psychiatry. In addition to his private practice, he serves as an Adjunct Associate Professor of Psychiatry at the University of Texas School of Medicine. As of the time of trial, he had performed approximately 180 evaluations for behavioral abnormalities in cases such as this over a span of nineteen years.[2]

Dr. Arambula's general methodology for evaluating a person for behavioral abnormalities includes an assessment of the person's developmental, educational, work, relational, substance abuse, medical, and mental-illness histories. He does this through a review of the available records, such as the investigative records from the criminal case, any previous mental health evaluations, and prison records. His assessment also includes an interview of the subject person.

One question he addressed is whether Appellant has a behavioral abnormality, which is a legal and not a medical term. To help answer that question, Dr. Arambula assesses the person under the Diagnostic and Statistical Manual (DSM), a publication of the American Psychiatric Association that list the criteria for diagnosis of most major mental conditions. Another part of the inquiry is whether the person is likely to engage in a predatory act of sexual violence. To help answer that question, Dr. Arambula evaluates the person against a list of "risk factors" for future recidivism. The risk assessment also considers protective factors, which may simply be the lack of a particular risk factor, or possibly a factor that militates against the risk of recidivism. He then balances the positive and negative factors. His definition of "likely" for engaging in more "predatory acts" is akin to a "more likely than not" standard, as distinct from a mere possibility. Dr. Arambula testified that all the risk factors that he employs are based on accepted literature in the field, though the specific citations to the literature were not developed in the record.

---

[2] The State admitted Dr. Arambula's curriculum vitae which further describes his training, education, honors, teaching experience, professional organizations, and publications. No challenge was made to his qualifications as an expert at trial.

3

Dr. Arambula also describes his methodology as standard in the field of forensic psychiatry.

Consistent with that methodology, before meeting with Appellant, Dr. Arambula reviewed a previous mental-health evaluation conducted by another psychologist, Appellant's scores on the Static-99R and Psychopathy Checklist Revised (PCL-R) tests,[3] and Appellant's criminal, legal, and medical records. After reviewing those records, Dr. Arambula interviewed Appellant in person for around two-and-a-half hours.

### 2. *Appellant's acts of sexual abuse*

From Dr. Arambula's interview with Appellant, and review of the case records, he learned the following history for Appellant's offenses. Appellant's daughter claimed that she was four or five years old when the abuse started. At the time, Appellant was approximately twenty years old and his wife had just left the household. Appellant began "fondling" his daughter, which later led to him undressing her, taking nude photographs of her, performing oral sex on her, along with digital and penile penetration of her vagina and anus. According to the investigative records, the acts of vaginal sex occurred "two to three times a week . . . [and] persisted for almost 12 years." Appellant told Dr. Arambula that he stopped abusing his daughter when she was sixteen years old because she told him to stop. Contrary to the investigative records, Appellant recounted that his daughter was about nine years old when the abuse started and that the frequency of abuse was a few times per year instead of a few times per week. He also denied the allegation that he performed oral sex on her. Dr. Arambula concluded that Appellant at least somewhat believed that the daughter was a willing participant in the sex acts—an indication that Appellant had not fully accepted responsibility for the abuse.

---

[3] The Static-99R test is an actuarial instrument that measures risk for sexually reoffending, with possible scores of negative three to twelve. The PCL-R is an instrument that measures psychopathy and antisocial behavior. The PCL-R test has possible scores from zero to forty, with a score of thirty or higher suggesting the presence of psychopathy.

Although the daughter made an initial outcry of sexual abuse, nothing was done until Appellant's son later reported the abuse committed against him. That abuse started when his son was thirteen years old, and after the daughter left the household. According to investigative records, Appellant "fondled" his son, took nude photographs of him, forced him to dress in lingerie and girl's clothing once, performed oral sex on him, and engaged in anal sex with him. The son reported four instances of abuse, at least one of which occurred at Appellant's workplace. Although he felt some guilt about his abuse of his son, Appellant also believed that the child was a willing participant in the sexual acts.

### 3. Appellant's diagnoses and risk/protective factors

Dr. Arambula concluded that Appellant has a behavioral abnormality that makes him likely to engage in another predatory act of sexual violence. Under the DSM criteria, Dr. Arambula diagnosed Appellant with pedophilia, a sexual attraction to activities and fantasies involving children.[4] According to Dr. Arambula, pedophilia is a congenital or acquired behavioral abnormality that can be managed with treatment, but it is chronic condition and lasts indefinitely. Dr. Arambula also diagnosed Appellant with: (1) unspecified anxiety disorder; (2) unspecified personality disorder, which included antisocial tendencies; and (3) and alcohol/marijuana use disorder, all of which were in remission at the time of trial.

Although Appellant's acts of sexual abuse did not involve acts of physical violence, Dr. Arambula stated that the abuse was sexually violent because of the emotional and physical harm caused by the abuse, such as the son's report that the abusive acts injured his rectum. Dr. Arambula believed that the new abuse of his son following the daughter's departure, as well

---

[4] The DSM states that pedophiles typically victimize children twelve years old and younger, i.e., those without secondary sexual characteristics. Dr. Arambula acknowledged that Appellant's son was thirteen years old at the time of the abuse and did not fit precisely into the age criterion for a pedophilia diagnosis.

as Appellant's attraction to adult women, suggested that his acts constituted pedophilia, and not merely an incestual attraction to his daughter. Dr. Arambula concluded that Appellant's pedophilic disorder still affected his emotional or volitional capacities at the time of trial, and it was "very obvious" that it causes him to be a menace to the health and safety of another. In support of this diagnosis, Dr. Arambula stated that a person with sexual deviance often fails to acknowledge the allegations in investigative records because they do not accept responsibility for their actions, and denial of these allegations can reveal whether the person's sexual deviance is still active.

As for the future likelihood of predatory acts, Dr. Arambula identified two risk factors as "overshadow[ing] everything else." The first of those factors is the degree and frequency of acts of sexual deviance. "Sexual deviance" refers to a person who has "an abnormal sexual condition regarding their sexual preferences, practices, [and] fantasies . . . ." And it was the frequency and duration of the sexual deviance that most impacted Dr. Arambula's opinion:

> So the risk in this case, it's the length of time and the number of incidents, and that's because research on sexual recidivism has shown that when somebody carries one offense, that their reoffense rate is probably around 15 percent, that's a ball park figure, but when they carry two or more, then it doubles. And so in this case, I mean, even if you lowballed it at two times a week, you know, we're -- we're talking about close to a thousand incidents over 12 years. That's an extremely long period, so his risk for recidivism would -- would theoretically be sky-high compared to what the research shows when somebody has just offended twice.

Dr. Arambula remarked that he had not seen a case with as many separate sexual-abuse acts as with Appellant. The second of the major risk factors is an antisocial personality. For that factor, Dr. Arambula identified "some antisocial features" but he acknowledged that they were not "as strong as some of the other people I've seen."

Dr. Arambula noted other positive factors for the risk of recidivism. Based on his interview, Dr. Arambula concluded that Appellant did not accept full responsibility for the abuse.

6

Moreover, at the time of trial, Appellant did not believe that he is a sex offender, that he is attracted to children, or that he is at any risk to recidivate. Appellant still did not know why he sexually abused his children and had never received sex offender treatment.[5] To Dr. Arambula, these claims reflect a denial of responsibility, and thus another positive risk factor for recidivism. Additionally, offenses against boys tend to carry higher rates of risk of recidivism. And offending against his daughter while he had access to a consenting adult relationship qualified as another positive risk factor. Finally, one dynamic risk factor that Dr. Arambula noted was that Appellant abused his son once at the workplace which carries a higher risk of being caught.

Acknowledging protective factors, Dr. Arambula agreed that Appellant had a stable employment history during the time he abused his son and daughter. Appellant also positively adjusted to prison life, and lacked any significant infractions during his imprisonment (other than one prohibited letter he wrote to his daughter). Dr. Arambula also agreed that Appellant's score on the Static-99R test suggested a low risk for his recidivism, but he cautioned that the test results alone "seriously underestimate" the risk for recidivism because the test considers the three counts that Appellant plead guilty to as a single event, and it also does not take into account all the other acts during the extended period of abuse. Dr. Arambula also took into consideration Appellant's score on the PCL-R test, which gauges antisocial behavior. Appellant took that test twice, with one score very low on the psychopathy scale, and the other in the moderate range.

Considering the definition for "behavioral abnormality," found in the Texas Health and Safety Code, Dr. Arambula testified that Appellant suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. His risk to reoffend "still remains high based on his history, and I'm talking about the seriousness of his sexual deviance,

---

[5] Appellant would have been eligible for a sex offender program if paroled, but he declined the opportunity to seek parole. He claimed that no one explained the parole process to him.

7

how long it persisted and how many acts of sexual abuse occurred during that almost 12 year period to his children."

## C. Stephen Thorne, Ph.D.'s Testimony

### 1. Dr. Thorne's Credentials and Methodology

Appellant called as his expert witness Dr. Stephen Thorne, a licensed forensic psychologist, who has a Ph.D. in clinical psychology. Dr. Thorne has performed approximately three hundred behavioral abnormality evaluations over approximately sixteen years of practice. Dr. Thorne's curriculum vitae was also admitted into evidence, which like Dr. Arambula's, further describes his training, education, honors, teaching experience, professional organizations, and publications. No challenge was made to Dr. Thorne's qualifications at trial.

Dr. Thorne defines a behavioral abnormality as a congenital or acquired condition that affects a person's emotional or volitional capacity, causing the person to be predisposed to commit a sexually violent offense to the extent that they become a menace to the health and safety of another person. He testified that most of the evaluations he performs result in a finding that the evaluated person has a behavioral abnormality.

Dr. Thorne's methodology employs a "clinically adjusted actuarial approach," which includes using data from actuarial instruments such as the Static-99R test. That test is a widely used actuarial instrument containing ten risk factors associated with the risk of sexual re-offending. But he also considers information from other sources, such as prior criminal, medical, and prison records. Here, he reviewed those records for Appellant, as well as a prior psychiatric evaluation, a video-taped deposition, and written letters from Appellant. He also interviewed Appellant for a little more than three hours and administered the Static-99R. To the best of Dr. Thorne's knowledge, he examined the same records that Dr. Arambula used to come to his diagnosis.

## 2. *Appellant's diagnoses, risk factors, and protective factors*

Dr. Thorne diagnosed Appellant with depression, anxiety, pedophilic disorder, and due to his son's age at the time of the abuse, sexual abuse of a child. Dr. Thorne further concluded that although Appellant has an elevated risk for re-offending compared to the average person, he does not meet the criteria for a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Thorne based his conclusion on Appellant's Static-99R scores as compared to other sex offenders from Texas and other countries who had the same scores, and who exhibited low rates of reoffending. Although Dr. Thorne did not diagnose Appellant with an antisocial personality disorder, he noted that Appellant exhibited "adult antisocial behavior." Appellant generally admitted to Dr. Thorne that he sexually abused his son and daughter, with some inconsistencies with what was in his records. In Dr. Thorne's opinion, Appellant does not understand his sexual offending.

As for Appellant's risk factors, Dr. Thorne agreed that Appellant's abuse of a male child points to a greater risk for reoffending. Appellant's use of alcohol and narcotics is also a risk factor. Although Dr. Thorne did not consider the length of the abuse to be as relevant as other factors, the number of abusive incidents was "at least relevant to consider." Other factors weighed in Appellant's favor as noted by Dr. Thorne: (1) good adjustment to prison life and low number of disciplinary cases in prison, none of which related to sexual offending; (2) Appellant's advanced age which correlates with a decline in the rate of sexual offenses; (3) the lack of significant antisocial orientation or criminal disposition outside his known sexual offenses; and (4) the lack of victims outside of Appellant's family. Additionally, Dr. Thorne administered the PCL-R test to Appellant, who scored in the moderate range for psychopathy and did not indicate the presence of psychopathy. Dr. Thorne stated that Appellant's lack of treatment was not a risk

factor.

### D. Appellant's Testimony

The State also called Appellant to testify in its case-in-chief. He dropped out of school in the eighth grade, and got married at age sixteen to his wife who was fifteen years old. His wife left him when their daughter was approximately four years old, and the daughter stayed with Appellant. After his wife left, Appellant agreed that he became sexually attracted to his daughter. He also agreed with the daughter's general allegation that he sexually abused her on a regular basis. During the period of abuse, without being bidden to do so, his daughter would go into a room, undress, and wait for Appellant to engage in sexual intercourse with her. Appellant admitted to touching her vagina with his hand, engaging in oral sex, and penetrating her vagina with his fingers and penis when she was approximately fifteen and sixteen years old. He also acknowledged that he rubbed his penis on her vagina and buttocks when she was nine years old. He masturbated and ejaculated on his daughter, and took pictures of her while she was naked, later masturbating to the pictures. Appellant admitted that the abuse sometimes occurred about three times per week, but that this frequency of abuse did not happen every week.

Appellant denied being sexually attracted to his daughter but claimed that he was "disassociating her with what was going on." Appellant stopped the abuse when she was sixteen years old and asked him to stop. Appellant acknowledged that he knew the abuse was wrong and that he should have known to stop on his own. Although Appellant felt sorry for what he had done at the time of trial, he did not feel remorseful about the abuse while it was occurring.

After his daughter left home, Appellant admitted to sexually abusing his son on four separate incidents. During the first incident, Appellant, who was intoxicated, forced his son to wear girl's clothing, covered his face with a pillow, performed oral sex on him, and engaged in

reciprocal anal sex acts. During the second and fourth incidents, which occurred at Appellant's workplace, Appellant performed oral sex on, and engaged in anal sex with, his son. The third incident, which occurred at Appellant's home, similarly involved oral and anal sex. Appellant testified that he was not attracted to his son, but he "disassociated" with the abusive acts. Appellant threatened to kill himself if his son told anybody about the abuse. Nonetheless, the son eventually made an outcry at school, and his daughter made her own outcry a short time later.

Appellant generally did not dispute the children's prior statements over the details of the abuse. Appellant testified that he did not know why he abused his children and stated that he "was sexually deviant then." He admitted to heavily drinking alcohol and using narcotics at that time. Appellant sought psychiatric treatment prior to his imprisonment. By trial, Appellant believed he was now incapable of sexually offending against children, and that he was not at risk of offending again through "[r]igorous honesty and abstinence . . . [from] masturbation, fantasies, anything," and by avoiding the urge to reoffend. Appellant did not receive sex-offender treatment during his incarceration, but he attended sexual-assault-awareness classes. Appellant desired to receive sex-offender treatment and an orchiectomy (i.e., castration), but he did not qualify to receive the latter procedure while imprisoned.[6]

In his most recent parole review, Appellant refused to be paroled because he was afraid of being released and "nobody would explain anything to [him] about it." Appellant stated that if released, he would stay with his mother if necessary, but he preferred to be placed in a residence under the Texas Correctional Office's Mental Health Mental Retardation program.

---

[6] In a letter to Freedom House Discipleship, an addiction treatment center, Appellant stated that he was "seeking a sex offender treatment program or rehabilitation programs with the end goal of receiving an orchiectomy" and he stated that he had "confidence in [his] ability to compl[ete] and pass all programs and psychological assessments required of [him]."

11

## II. DISCUSSION

In three issues, Appellant argues that: (1) the evidence is legally and factually insufficient to support the jury's finding that Appellant is an SVP; and (2) Appellant's civil commitment violates his due process rights because there is no evidence that he has serious difficulty controlling his behavior. We consider each issue in turn.

### A. The SVP Act Generally

The Legislature enacted the SVP Act finding that:

> [A] small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence . . . . Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

TEX.HEALTH & SAFETY CODE ANN. § 841.001. The SVP Act provides a "civil commitment procedure for the long-term supervision and treatment of sexually violent predators." *Id.* If an offender is found to be an SVP, a trial court commits the offender for treatment and supervision to be coordinated by the Texas Civil Commitment Office, the designated agency responsible for providing treatment. *Id.* §§ 841.007(1), 841.081(a).

An SVP is defined by two elements that the State must prove at trial: (1) the offender is a "repeat sexually violent offender;" and (2) the offender "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX.HEALTH & SAFETY CODE ANN. §§ 841.003(a)(1), (2). The State bears the burden of proving both elements beyond a reasonable doubt. *Id.* § 841.062(a). Regarding the first element, an offender is a repeat SVP if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. *Id.* § 841.003(b). Relevant here, sexual assault is a sexually

12

violent offense, and Appellant does not challenge this element on appeal. *Id.* § 841.002(8)(A); *see also* TEX.PENAL CODE ANN. § 22.011.

As to the second element, which Appellant does contest on appeal, a behavioral abnormality is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.003(a)(1), (2). A predatory act is defined as "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5). Only these two elements need to be proven by the State, and appellate courts have repeatedly rejected attempts to add additional, non-statutory elements to the State's burden. *In re Commitment of Cordova*, 618 S.W.3d 904, 916 (Tex.App.--El Paso 2021, no pet.) (collecting cases).

## B. Legal-Sufficiency Challenge

### 1. Standard of Review

When determining the legal sufficiency of the evidence in an SVP case, an appellate court reviews the evidence in the light most favorable to the verdict to determine whether any rational fact finder could find, beyond a reasonable doubt, the elements required for commitment under the SVP Act. *Cordova*, 618 S.W.3d at 915. Under this standard, it is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. An appellant must demonstrate that no evidence supports the jury's finding to prevail on a legal-sufficiency challenge to the evidence. *Id*.

Here, the evidentiary challenge largely turns on the credence that a court must give to Dr. Arambula's testimony. No challenge to his credentials, methodology, or conclusions was made below. Accordingly, we are asked to disregard the testimony for the first time on appeal as

13

part of a legal sufficiency challenge. And no doubt, "[b]are, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). Accordingly, a party for the first time on appeal may challenge an expert's conclusion that is conclusory or speculative. *See Coastal Transportation Co. v. Crown Central Petroleum Corp*., 136 S.W.3d 227, 232 (Tex. 2004) ("[T]his Court has held that such conclusory statements cannot support a judgment even when no objection was made to the statements at trial."); *Dallas Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 380 (Tex. 1956) ("It is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection."); *see also Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997) ("When the expert 'br[ings] to court little more than his credentials and a subjective opinion,' this is not evidence that would support a judgment . . . . If for some reason such testimony were admitted in a trial without objection, would a reviewing court be obliged to accept it as some evidence? The answer is no.").

But by contrast, when a non-conclusory scientific opinion is challenged as unreliable, a party must object at trial to complain that the evidence is legally insufficient to support the judgment. *Pollock*, 284 S.W.3d at 816-17. The rationale for that rule is fair notice, allowing the sponsoring party of the testimony the opportunity to defend the reliability of the opinion. *Id.* at 817. Thus, when a court must "evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Id.; see also Cordova*, 618 S.W.3d at 916-17.[7]

---

[7] Appellant cites *Coble v. State* for the proposition that a forensic psychiatrist fails to demonstrate the reliability of his methodology if he does not testify that the methodology is accepted in the scientific community or that it is an accurate predictor of future behavior. 330 S.W.3d 253, 278-79 (Tex.Crim.App. 2010). The challenge to the expert's

### 2. *The evidence is legally sufficient to support the jury's finding*

Appellant argues that the evidence is legally insufficient to support the jury's SVP finding because Dr. Arambula's testimony was too misleading, conclusory, and speculative to allow a rational fact finder to find the elements required for commitment under the SVP Act. More specifically, Appellant contends that Dr. Arambula's testimony: (1) failed to establish the reliability of his expert opinion; (2) asserted in a speculative and conclusory manner that he properly relied on principles involved in the field of psychiatry; and (3) was not sufficiently founded on data that supported his conclusions. But where, as here, an offender did not object to the reliability of the State's expert's opinion at trial, the offender cannot challenge the reliability of the expert's opinion on appeal. Rather, we restrict our review of a legal sufficiency challenge on this ground to determine only whether there is some basis to support the expert's opinion, such that the opinion at issue was not conclusory.[8]

We find that Dr. Arambula's opinion that Appellant has a behavioral abnormality was sufficiently supported and was not conclusory. Dr. Arambula testified that he had conducted approximately 180 SVP evaluations at the time of trial, and his opinion was based on the

---

opinion in *Coble*, however, took the form of a trial-court level challenge to the reliability of the expert's opinion under the *Daubert/Kelly* standard and TEX.R.EVID. 702, not as an appellate challenge to the legal sufficiency of the evidence supporting the basis for the expert's opinion. *See id*. at 270. Because Appellant did not challenge the reliability of Dr. Arambula's opinion in the trial court, and because we restrict our review of a legal sufficiency challenge on this ground to determine only whether there is some basis to support the expert's opinion, such that the opinion at issue was not conclusory, we find *Coble* to be distinguishable and inapplicable here. *See In re Commitment of Cordova*, 618 S.W.3d 904, 917 (Tex.App.--El Paso 2021, no pet.); *see also In re Commitment of Crosby*, No. 09-11-00371-CV, 2012 WL 983168, at *2 (Tex.App.--Beaumont March 22, 2012, pet. denied) (mem. op.) (finding *Coble* inapposite in a challenge to the legal sufficiency of the evidence supporting a behavioral-abnormality finding because the offender did not raise a challenge to the reliability of the expert's opinion in the trial court).

[8] We also acknowledge that an expert opinion can still be conclusory when the expert offers some basis to support an opinion, but that basis lacks any support in the record. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 905-06 (Tex. 2004) (court disregarded expert's opinion that a wheel bearing failed causing wheel to come loose from axle, yet the wheel somehow stayed in the wheel well as the car crossed the median and collided with another car). Appellant's challenges simply do not rise to that level.

methodology he was trained in within the field of forensics and used by other experts in the field. In forming his opinion, Dr. Arambula reviewed: (1) several documents associated with Appellant's criminal, medical, and prison records; (2) his criminal history; (3) his Static-99R and PCL-R test scores; and (4) a past psychological evaluation conducted by another psychiatrist. After reviewing this evidence, Dr. Arambula interviewed Appellant in person over a period of two-and-a-half hours about the sexual abuse and his current psychological state.

After considering all the above information, Dr. Arambula used the DSM, the standard manual used in the field of psychology to diagnose mental illness—pedophilia—as a behavioral abnormality under the SVP Act. Dr. Arambula also considered the nature of Appellant's offenses and the risk factors associated with the likelihood of reoffending when forming his conclusions, including: (1) Appellant's sexual deviance and antisocial tendencies; (2) the number and frequency of sexually abusive instances; and (3) Appellant's denial of responsibility and his refusal to acknowledge his sexual urges toward children. Dr. Arambula also considered Appellant's protective factors, including: (1) his stable employment; (2) his lack of offenses and misconduct while he was imprisoned; and (3) his low scores on the Static-99R and PCL-R tests.

As a result, Dr. Arambula's opinion was sufficiently linked to the facts and was not otherwise conclusory. The opinion that Appellant had the requisite behavioral abnormality, combined with the undisputed fact that Appellant had been convicted of multiple sexually violent offenses and was therefore a repeat violent sexual offender, constitutes legally sufficient evidence to prove beyond a reasonable doubt that Appellant is an SVP. *See, e.g.*, *Cordova*, 618 S.W.3d at 917-18 (holding that experts' opinions in an SVP Act case were sufficiently supported by underlying bases where the experts: (1) had significant experience in conducting SVP evaluations; (2) based their opinions on their consideration of the offender's test scores and criminal, medical,

and other histories; (3) conducted an in-person interview with the offender; and (4) considered the offender's risk and protective factors and his lack of progress in sex-offender treatment); *In re Commitment of Manuel*, No. 01-18-00650-CV, 2019 WL 2458986, at *5 (Tex.App.--Houston [1st Dist.] June 13, 2019, pet. denied) (mem. op.) (holding that an expert's opinion in an SVP case was supported because the expert: (1) testified at length about his methodology; (2) reviewed trial and prison records; (3) interviewed the offender; (4) considered the offender's Static-99R scores, risk factors, and protective factors, and testified about the importance of certain factors; and (5) diagnosed the offender with a behavioral abnormality).

Appellant also argues that Dr. Arambula's definition of whether Appellant was "likely" to reoffend under the SVP Act rendered his opinion on the matter conclusory or speculative. Dr. Arambula testified that "'likely' carries a level of certainty with it, so I correlate it with 'probably' as opposed to the opposite of that . . . 'possibly,' in other words, anything is possible. 'Likelihood' could also include logic, like it's *more likely than not* as opposed to that it's just a happenstance or by chance (emphasis supplied)." Appellant concedes that defining "likely" as "more likely than not" is a valid definition to which he does not object. And courts have recognized that an expert's interpretation of the term "likely" does not, by itself, render the evidence legally or factually insufficient on the issue of whether Appellant has a behavioral abnormality. Rather, because the term "likely" is not defined by statute, an expert's definition of "likely" goes to the weight the jury decides to give to the expert's testimony. *See, e.g.*, *In re Commitment of Hill*, 621 S.W.3d 336, 343 n.3 (Tex.App.--Dallas 2021, no pet.); *see also In re Commitment of Rollings*, No. 05-17-00938-CV, 2018 WL 6695731, at *5 (Tex.App.--Dallas Dec. 20, 2018, no pet.) (mem. op.) (noting that an expert's opinion on the definition of "likely" did not "in and of itself render the evidence insufficient to support a jury's finding that a person

suffers from a behavioral abnormality."). For these reasons, Appellant's contention over Dr. Arambula's definition of "likely" lacks merit.

Appellant's Issue One is overruled.

### C. Factual-Sufficiency Challenge

#### 1. Standard of Review

A factual-sufficiency review in an SVP case requires an appellate court to determine whether, on the entire record, a reasonable fact finder could find beyond a reasonable doubt that the offender is an SVP. *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020). An appellate court may not usurp the jury's role of determining the credibility of witnesses and the weight of their testimonies, and the court should presume that the fact finder resolved disputed evidence in favor of the challenged finding if a reasonable fact finder could do so. *Id.* The evidence is factually insufficient if the remaining evidence contrary to the finding is so significant considering the entire record that the fact finder could not have determined beyond a reasonable doubt that its finding was true. *Id.* In sum, the appellate standard governing a factual-sufficiency review of a finding that a person is an SVP is "whether, in light of the entire record, the disputed evidence a reasonable fact finder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the fact finder could not have found beyond a reasonable doubt that the statutory elements were met." *Cordova*, 618 S.W.3d at 915, *quoting Stoddard*, 619 S.W.3d at 678.

#### 2. The evidence is factually sufficient to support the jury's finding

As to the factual-sufficiency challenge, Appellant contends that several undisputed facts contradict the jury's verdict, including his lack of: (1) psychopathy and antisocial tendencies; (2) reoffending after being criminally charged; (3) violent or sexual infractions during his

18

incarceration; and (4) sexual abuse of anyone outside his family. Although these facts may weigh against a risk to reoffend, neither expert testified that such facts exclude the possibility of a behavioral abnormality finding, and we do not find these facts to be so significant as to compromise the factual sufficiency of the evidence.

Appellant also argues that Appellant's low Static-99R score suggested a low risk for his reoffending, and that Dr. Arambula's opinion on the Static-99R's tendency to underestimate risk of reoffending should not outweigh the Static-99R's validity. But Dr. Thorne also testified that the Static-99R does not consider an offender's history of sexually reoffending, the specific nature of the offenses, or the offender's use of alcohol or narcotics, and he testified that the Static-99R does not test for a behavioral abnormality. Dr. Thorne added that it was important to consider factors beyond an offender's Static-99R scores in determining whether the offender has a behavioral abnormality.

It was within the province of the jury to weigh this evidence against the verdict and resolve its conflicts with other evidence. Considering the other evidence in the record, Appellant's Static-99R score does not constitute evidence that "is so significant that the fact finder could not have found beyond a reasonable doubt that the statutory elements were met." *See Cordova*, 618 S.W.3d at 915, *quoting Stoddard*, 619 S.W.3d at 678; *see also In re Commitment of Williams*, 539 S.W.3d 429, 440-41 (Tex.App.--Houston [1st Dist.] 2017, no pet.) (holding that an offender's Static-99R score that reflected a "low-moderate" risk of reoffending did not render the evidence factually insufficient on the SVP issue because the State presented evidence that despite the offender's low score, the offender's risk of reoffending was higher than the "low-moderate" range).

19

In his testimony, Appellant also mostly acknowledged that he committed the offenses against his children. Nevertheless, Appellant also believed he was now incapable of sexually offending against children. Again, the fact finder may weigh the evidence, judge the credibility of the witnesses' testimonies, and resolve the conflicts in the evidence, and we may not usurp the jury's role of determining the credibility of the witnesses and the weight to be given their testimonies. As the fact finder, the jury was allowed to reject Appellant's testimony. *See Stoddard*, 619 S.W.3d at 678.

Finally, Dr. Thorne's conclusion that Appellant does not have a behavioral abnormality is disputed evidence that a reasonable fact finder may not have credited. Dr. Arambula came to a different conclusion and concluded that Appellant does have a behavioral abnormality that caused him to likely be a threat of committing future acts. Both experts diagnosed Appellant with pedophilia. Giving proper deference to the verdict, we presume that the jury accepted Dr. Arambula's opinion that Appellant has a behavioral abnormality, and we thus resolve any disputed evidence in favor of the verdict. *See Stoddard*, 619 S.W.3d at 668; *see also Williams*, 539 S.W.3d at 440-41 (holding that factually sufficient evidence supported the jury's SVP finding where the State's expert diagnosed the offender with pedophilia and found that the offender has a behavioral abnormality, despite the offender's "low-moderate" score on the Static-99R and two other experts' opinions that the offender did not have a behavioral abnormality); *In re Commitment of James*, No. 01-19-00734-CV, 2021 WL 4597105, at *10-11 (Tex.App.--Houston [1st Dist.] Oct. 7, 2021, pet. denied) (mem. op.) (holding that factually sufficient evidence supported the jury's SVP finding where the record contained: (1) evidence that the offender had been convicted of multiple sexually violent offenses, including details of the offenses; (2) experts' testimony about the offender's risk and protective factors; (3) the offender's denial of the sexual offenses or that

he has a sexual drive; and (4) the offender's "average" scores on the Static-99R and PCL-R, as well as the experts' opinions on the limitations of those tests).

Appellant's Issue Two is overruled.

### D. Constitutional Claim

Finally, Appellant claims that his commitment violated his due process rights protected through the Fourteenth Amendment because no evidence established that he has serious difficulty controlling his behavior. He urges that the only evidence that he has difficulty controlling his behavior was his past sexual abuse of his children, which cannot alone establish any present difficulty controlling his behavior. He accordingly claims the record falls short of what the Due Process Clause requires as articulated in *Kansas v. Crane*: proof that an offender has "serious difficulty in controlling [his] behavior[.]" 534 U.S. 407, 413 (2002).

This Court has recognized that appellate courts have rejected attempts to add additional sub-elements to the two statutory elements under section 841.003(a). *See Cordova*, 618 S.W.3d at 916, *citing Stoddard*, 619 S.W.3d at 677-78, *Williams*, 539 S.W.3d at 438-39, *and In re Commitment of Hall*, No. 09-09-00387-CV, 2010 WL 3910365, at *2-3 (Tex.App.--Beaumont Oct. 7, 2010, no pet.) (mem. op.). Moreover, other Texas courts have specifically rejected the argument that a separate finding that an offender has serious difficulty controlling his behavior is necessary to support an SVP finding, reasoning that a jury's finding that an offender has a behavioral abnormality also "entails an implicit determination that the [offender] has serious difficulty controlling [his] behavior." *See*, *e.g*., *In re Commitment of Renshaw*, 598 S.W.3d 303, 306-07 (Tex.App.--Texarkana 2020, no pet.), *quoting In re Commitment of Stuteville*, 463 S.W.3d 543, 552 (Tex.App.--Houston [1st Dist.] 2015, pet. denied); *see also In re Commitment of Almaguer*, 117 S.W.3d 500, 505-06 (Tex.App.--Beaumont 2003, pet. denied). And juries may

infer that an offender has serious difficulty controlling their current behavior based on their past behavior. *Renshaw*, 598 S.W.3d at 306-07, *citing Stuteville*, 463 S.W.3d at 552.

As shown above, legally and factually sufficient evidence, including the nature and frequency of Appellant's prior sexual offenses against his children, supports the jury's behavioral-abnormality finding. Implicit in that determination is a finding that Appellant has difficulty controlling his behavior, which is supported by Appellant's trial testimony that he felt guilt for sexually abusing his children but continued to do so anyway, and that he should have known that he needed to stop the abuse. *See Renshaw*, 598 S.W.3d at 306-07; *In re Commitment of Riojas*, 220 S.W.3d 195, 196 (Tex.App.--Beaumont 2007, no pet.). The trial court did not need to submit an additional jury instruction requiring the jury to find that Appellant has serious difficulty controlling his behavior, and the jury did not need to separately make such a finding to satisfy due process requirements. *See Williams*, 539 S.W.3d at 446-47. Moreover, the Texas Supreme Court has recognized that a factual-sufficiency review of the two elements under the SVP Act does not threaten the SVP Act's constitutionality. *Stoddard*, 619 S.W.3d at 678, *citing Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (upholding the constitutionality of an SVP statute with substantially similar elements to the SVP Act).

Thus, because the jury found that Appellant has a behavioral abnormality, the jury also impliedly found that he has serious difficulty controlling his behavior. And because legally and factually sufficient evidence supports the behavioral-abnormality finding, the Due Process Clause was satisfied.

Appellant's Issue Three is overruled.

## VII. CONCLUSION

We affirm the judgment of the trial court.

22

JEFF ALLEY, Justice

June 3, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.